Jack M. MILLER, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

No. 468–E.

United States District Court
N. D. West Virginia.

Nov. 23, 1965.

C. Donald Robertson, Atty. Gen. of West Virginia, Thomas B. Yost, Asst. Atty. Gen. of West Virginia, for respondent.

MAXWELL, Chief Judge.

Jack M. Miller is a prisoner at the West Virginia State Penitentiary, Moundsville, serving a one to ten year sentence for grand larceny. He has petitioned this Court in forma pauperis for a writ of habeas corpus. Miller's petition states allegations, which, if true, would entitle him to Federal habeas corpus relief.[1]

However, for the reasons announced in this memorandum, Miller's petition is not considered on the merits, but dismissed for failure to exhaust available state remedies as required by 28 U.S.C. § 2254.

In declining to take jurisdiction of the case this Court is reversing its former practice. This is done to reaffirm and place in proper perspective the historic relationship between the Federal and State judiciaries in preserving and protecting the fundamental rights of the individual.

In announcing a new rule regarding the requirement of "exhaustion" found in 28 U.S.C. § 2254, this Court has the benefit of recent scholarly contributions, as well as the added illumination of Federal policy stated by the Supreme Court during the 1964 term. Before stating these new rules and their underlying rationale, the facts in Miller's case should first be surveyed.

Miller was found guilty by a jury and sentenced from one to ten years. He failed to appeal from his conviction. Thereafter he filed for a writ of habeas corpus in the West Virginia Supreme Court of Appeals. His petition there stated grounds for relief substantially the same as the allegations he now attempts to urge upon this Court by way of Federal habeas corpus. Miller's state court petition was denied without further proceedings by the State high court. He next filed this petition for Federal habeas corpus.

Under the former practice of this Court, Miller's petition for State habeas corpus relief upon an original petition to the Supreme Court of Appeals of West Virginia, alleging claims similar to those submitted here, would have been an adequate showing that Miller had met the requirements of "exhaustion."[2] However, from this time forth such a showing is inadequate.[3]

■ In order to satisfy the provisions of 28 U.S.C. § 2254 a state prisoner normally would do one of the following: (1) Allege in his petition that the claim urged in the Federal Court was determined at his criminal trial and asserted as reversible error in his application for writ of error; or (2) allege that, the time for direct appeal from his conviction has passed, he has unsuccessfully petitioned the appropriate State circuit court for a writ of habeas corpus on the same grounds urged in this Court and that he thereafter filed a timely application to the Supreme Court of Appeals of West Virginia for a writ of error to review the circuit court's denial; or (3) allege that he has followed neither (1)

---

1. Miller's petition alleges that he was subjected to illegal interrogation by police without the offer of counsel and that his interrogators threatened him during the inquisition, thereby illegally inducing him to make an incriminatory statement which was used against him at trial.

2. "The petition shall show that the question which petitioner attempts to raise in this court was submitted to the State Courts, by exhibiting a copy of any petition submitted to the State Courts, together with a copy of the final order of the West Virginia Supreme Court of Appeals, denying the petition, or affirming the lower court's denial of such petition." Order of United States District Court for the Northern District of West Virginia (entered January 20, 1965).

3. Any petition for habeas corpus merely filed or lodged with this Court at this time and on which the Court has taken no further action before the date of this opinion, such as summarily dismissing on the merits, ordering the respondent to show cause, or setting a date for hearing, will be dealt with according to the rules set forth herein. Any habeas corpus case that has reached the status of an order to show cause, hearing or appeal, will be treated under the former rules of this Court.

nor (2) because it is obvious that the State courts will not now entertain such a claim. To satisfy this Court's requirements under the last alternative the petition should fully explain why further State court proceedings would be ineffectual, and, if possible, cite legal authority substantiating this belief.

The "exhaustion" rule enunciated today is based on the dictates of the Supreme Court as well as a recognition of the necessity and desirability of preserving harmonious relations between Federal and State judiciaries. However, in attempting to conciliate our dual systems the Court does not overlook the rights of the individual which the Ancient Writ is vouchsafed to protect. On the contrary, it is the belief of this Court that the principles announced here will provide speedier and more efficient adjudication of prisoners' claims, and at the same time effectuate the desire of the Congress and the Federal judiciary to place the adjudication of Federal rights of State prisoners in the proper forum—the State courts.

I. State prisoners and Federal rights.

In recent years the United States Supreme Court has handed down several opinions which have had substantial impact on the States' administration of criminal justice.[4] These decisions have broadened the scope of federally guaranteed rights accorded state criminal defendants, and also have made these rights more meaningful by providing a more expansive Federal remedy.

That expanded remedy is Federal habeas corpus. As interpreted by two cases, Fay v. Noia[5] and Townsend v. Sain[6], Federal habeas corpus relief is no longer fettered by procedural pitfalls which often foreclosed relief without a decision on the merits.

█ These two decisions are clear pronouncements of the final arbiter of Federal law and therefore controlling on any court of the Nation.[7] They clearly state the function, scope and intent of Federal habeas corpus and in doing so lay to rest many disputes that have arisen since the passage of that statute in 1867.[8]

A most important aspect of the Noia holding is the majority's lengthy discussion of the function of the writ of habeas corpus in the Federal courts. Formerly, there was much authority to support a contention that at common law habeas corpus was " * * * restricted * * * to a review of the face of the record to determine whether it established the jurisdiction of the convicting court over the subject matter of the action and over the person of the defendant, and whether the Court had authority to render its judgment."[9] Under this restrictive view a finding that the convicting court had general jurisdiction and the defendant had appeared before it was dispositive of the petition, even if the record also made it clear that irregularities of constitutional magnitude existed. "Constitutional denials were not examined, since even if present they would not invalidate the

4. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (extending the right to confrontation to state criminal defendants); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (right to counsel after arrest); Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (privilege against self incrimination); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel at trial absolute); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (right to counsel on direct appeal); Mapp v. Ohio, 367 U.S.

643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 1956) (right to transcript on appeal).

5. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

6. 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

7. United States Constitution, Article VI.

8. Judiciary Act of February 5, 1867, c. 28, § 1; 14 Stat. 385–386.

9. Note, State Post Conviction Remedies & Federal Habeas Corpus, 40 N.Y.U.L.Rev. 154, 158 (1965).

convicting court's jurisdiction, but would simply be deemed an irregularity in the trial court proceedings." [10]

The majority in Noia rejected this "jurisdictional" view in favor of the contention that habeas corpus had always been available to correct gross injustice whether it arose from the convicting court's lack of jurisdiction over the subject matter or prejudicial and unfair activity by the State in gaining a conviction.

Noia held Federal habeas corpus will lie to attack any State imprisonment, based upon a judgment obtained through the denial of a right guaranteed by the Fourteenth Amendment. Justice Brennan's majority opinion in Noia discredits the "jurisdictional" approach to the availability of Federal habeas corpus. The majority opinion sets forth exhaustive legal and historical arguments to show: (1) that the Great Writ has always been available for any imprisonment in contravention of basic concepts of justice; (2) that the belief that habeas corpus would only issue to discharge a prisoner when the sentencing court was without general jurisdiction arose years ago through a mistaken equation of "jurisdiction" and basic justice. [11] In fact, most early cases using "jurisdictional" language were also based on denial of basic justice. Since the concept of basic justice has grown to encompass many individual rights while the meaning of "jurisdiction" has remained relatively unchanged, the use of lack of "jurisdiction" as the sole basis for invoking the powers of the Writ is now totally inadequate and incorrect. [12]

The Noia opinion also rejected the theory that a showing by the State that the habeas corpus applicant did not appeal his conviction, or had otherwise failed to urge his constitutional claim by way of some state remedy no longer open to him, was an unrebuttable showing of waiver or that this failure was an "adequate and independent" state ground which precluded any decision on the constitutional question in a Federal habeas corpus case. This was done by holding that waiver of a Federal right would only be found according to the Federal standard [13] and that the doctrine

10. Id. at 158–159.

11. "Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office." Fay v. Noia, 372 U.S. at 401–402, 83 S.Ct. at 828–829 (Brennan, J.).

12. "Of course standards of due process have evolved over the centuries. But the nature and purpose of habeas corpus have remained constant. History refutes the notion that until recently the writ was available only in a very narrow class of lawless imprisonments." Id. at 402–403, 83 S.Ct. at 829. "Nor is it true that a common law habeas corpus was available only to inquire into the jurisdiction, in a narrow sense, of the committing court." Id. at 404, 83 S.Ct. at 830.

13. "* * * the Court ruled that, since waiver of a federal claim is a federal question, a state court's finding of waiver will not automatically bar independent federal examination. Then the Court enunciated a federal waiver standard adopted principally from the Johnson v. Zerbst [304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461] 'knowing and intelligent' formulation and presenting a clear contrast with the traditional state formulations. Conventional notions of waiver and finality of judgment, felt the Court, obstruct adequate vindication of federal rights * * *. The Court implied that a decision made by petitioner's counsel, without consulting his client, will not be considered 'an intentional relinquishment * * * of a known right or privilege' rather a waiver 'depends on a considered choice of the defendant.'" Note, State

of "adequate and independent" State grounds applied only to direct appellate review of State cases and not to a wholly separate and collateral proceeding, such as Federal habeas corpus.[14]

While Fay v. Noia destroyed these restrictive concepts, Townsend v. Sain, decided the same day, pointed the way for Federal and State courts to satisfactorily determine claims of constitutional deprivation made on collateral attack. Townsend makes it mandatory upon a Federal district court to try the constitutional issues anew whenever a proper claim is made and the petitioner had not received full and fair consideration of that claim in the State courts.[15] This command necessitates a Federal hearing on the merits whenever the petitioner's claim, if true, would entitle him to relief and the record developed in the State court does not fairly support a determination that the claim is untrue or that the right had been waived according to the Federal standard.[16]

II. The Federalism Problem.

The immediate aftermath of Noia and Townsend was chaotic, bringing a tidal wave of habeas corpus petitions from state prisoners into the Federal district courts, flooding their dockets and taxing their facilities to the utmost. Eminent State jurists and legal commentators deplored the invasion into the prerogatives of State criminal justice.[17] Legislation designed to curtail Federal habeas corpus jurisdiction has been presented to the Congress and legal associations have endorsed resolutions to take the teeth from the broadened concepts announced by the Court.[18] Some state prisoners are actually released through Federal habeas corpus. However, most successful petitioners, representing only a small percentage of those who seek this relief, are remanded to the State for a new trial or the perfection of an appeal. Only in cases in which retrial is impossible, or, if granted, results in acquittal, is release secured. This decision usually rests upon the State, not the Federal government.

Nevertheless, respected sources have urged that State criminal proceedings are primarily a matter of State concern, and as such, State judgments affirmed by the appellate Court should not be summarily struck down by Federal trial judges.[19] It is conceded that this has certain validity. This Court recognizes the problems these cases have caused in Federal-State relations. The Supreme Court and the Fourth Circuit Court of Appeals have also acknowledged these problems.[20] Those Courts have pointed

---

Post-Conviction Remedies & Federal Habeas Corpus, 40 N.Y.U.L.Rev. 154, 156–57 (1965). The decision in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) casts doubt upon the necessity of the defendant to participate fully in every tactical decision of trial counsel. Thereby, perhaps, diluting the stringent waiver standards suggested in Noia.

14. " * * * the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute." Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 827, 9 L.Ed.2d 837.

15. "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." Townsend v. Sain, 372 U.S. 293, 312–313, 83 S.Ct. 745, 757, 9 L.Ed. 2d 770 (1963).

16. Id. at 316, 83 S.Ct. at 759.

17. E. g., Desmond, Federal Habeas Corpus Review of State Court Convictions —Proposals for Reform, 9 Utah L.Rev. 18 (1964).

18. See H.R. 1835, 88th Cong., 2d Sess. (1964). See also H.R.Rept. No. 1384, 88th Cong., 2d Sess. (1964); 110 Cong. Rec. 14678–14684 (1964).

19. See Desmond, 9 Utah L.Rev. 18 (1964).

20. "The Court is not blind to the fact that the federal habeas corpus jurisdiction has been a source of irritation between federal and state judiciaries."

the way for the District Courts to deal with the situation. The seeds for this solution were sown by the Supreme Court many years ago, and specifically approved by Congress in 1948.[21] Their germination and fruition have been slow and the harvest among the states has been piecemeal. With the benefit of the guiding hand of the Supreme Court the solution is obvious. It involves neither minimization of the principles set forth in Noia and Townsend, nor hedging from the mandates of those decisions. Rather it involves principles that the Court and Congress have long accepted and that federalism demands. Stated simply, this solution recognizes the desirability of State determination of claims made by its prisoners before any judicial intervention is allowed through Federal habeas corpus. It also holds with the theory that the states, if given an opportunity, will fully protect the Federal constitutional rights guaranteed defendants in their court system. A further reading of Townsend, especially in light of several later cases, reaffirms the Federal policy favoring primary State determination. To be sure, it is not an abdication of the office of protector of Federal rights to State courts, but a recognition of State interest in, and ability to administer, its own system of criminal justice. Federal habeas corpus would largely become a vestigal remedy if the states seize the initiative, as encouraged by Federal courts, and provide adequate state remedies.

III. The Solution: Exhaustion and Federal Policy.

The solution thus far alluded to is that the states grant full and fair evidentiary hearings, in the first instance, to determine the validity of any prisoner's constitutional claim. Once a full and fair hearing on the constitutional claim is granted by a State court, Federal courts have it within their discretion to deny a trial of the facts anew.[22] In most such instances the Federal court will need to do nothing more than review the record made in the State court before disposing of the case.[23] If the hearing meets certain standards and is transcribed [24] the "historical facts" determined by the State judge may be accepted by the Federal court. Only the determination of "ultimate facts" need be arrived at independently by the Federal court, and this ordinarily can be done from the record. This, of course, means that generally the Federal court will review the record only to determine whether a fair hearing was held and whether the conclusions of law are supported by sufficient facts. Findings of credibility and the like made by the State court will usually be accepted by the Federal court.

The implementation of this form of Federal abstention in favor of prior State court determination of the facts is made possible by 28 U.S.C. § 2254. Called the "exhaustion doctrine" it was judicially created many years ago in Ex parte Royall [25] and codified in 1948. It is not a jurisdictional rule, but rather is grounded on the principles of comity.[26] As a rule of courtesy it must be administered according to the philosophic rea-

Henry v. State of Mississippi, 379 U.S. 443, at 453, 85 S.Ct. 564, at 571, 13 L. Ed.2d 408 (1965) (Brennan, J.). See Hunt v. Warden, 335 F.2d 936 (4 Cir. 1964).

21. 28 U.S.C. § 2254.

22. "If he (the federal habeas judge) concludes that the habeas applicant was afforded a full and fair (evidentiary) hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in the hearing." Townsend v. Sain, 372 U.S. 293, at 318, 83 S.Ct. 745, at 760, 9 L.Ed.2d 770.

23. See Meador, Accommodating State Criminal Procedure and Federal Post-Conviction Review, 50 A.B.A.J. 928 (1964). See generally 33 F.R.D. 365–505 (1964).

24. Those standards are set out in detail by the Court in Townsend v. Sain, 372 U.S. at 313–319, 83 S.Ct. at 757–760. See Note, 40 N.Y.U.L.Rev. 154, 175–187.

25. 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886).

26. "It is today unquestioned that the exhaustion provision 'is not one defining power but one which relates to the ap-

sons for its *esse* and not by mechanical principles. Moreover, because it deals with the exhaustion of state remedies it must be applied only after thorough consideration of the peculiar practices and remedies available in the particular state.

Therefore, the purposes of the rule, its underlying philosophy and rationale should be explored and applied to the peculiar situation in West Virginia in order to ascertain what State remedies should be sought before the requirements of exhaustion are met.

In recent years it has become clear that the main policy behind the "exhaustion doctrine" is to encourage and permit a state court hearing on the merits of the constitutional claim before permitting the Federal courts to accept jurisdiction of the case. Courts have emphasized that a state prisoner need not go through meaningless rituals in the State courts before seeking a Federal forum.[27] In several cases in which the state prisoner had previously, but unsuccessfully, availed himself of the State's post-conviction remedies, without a hearing on the merits, Federal courts have refused to exercise habeas corpus jurisdiction because an intervening State statute or judicial decision indicated that a new application for State relief would

be considered on the merits.[28] This Court's former practice of finding exhaustion after a petition to the West Virginia Supreme Court of Appeals for writ of habeas corpus was based on a literal reading of Grundler v. State of North Carolina, 283 F.2d 798, 800 (4th Cir. 1960):

> If a question is presented and adjudicated by the state's high court once, it is not necessary to urge it upon them a second time under an alternate procedure.

If the Court were to apply the doctrine of "exhaustion" mechanically this language would be sufficient precedent to hold that petitioner's actions in the case at bar were sufficient to meet the requirements of exhaustion. However, this Court's interpretation of West Virginia law coupled with Federal policy favoring State hearings compels re-examination of the former rule. This Court finds that a mechanical application of the rule announced in Grundler is not applicable to the instant case.

The Federal policy favoring State court determination of the relevant facts in cases involving constitutional claims by state prisoners, first announced in Townsend, was reaffirmed in less subtle tones in four cases during the 1964

propriate exercise of power.'" Sokol, Federal Habeas Corpus, at 113, citing and quoting from Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455. This theory is supported by cases in which federal jurisdiction was held proper even though the habeas applicant had not fulfilled the exact requirements of exhaustion, because " * * * to send * * * (petitioner) back to the State court * * * would be to follow the letter but ignore the spirit of § 2254." Thomas v. Cunningham, 335 F.2d 67, 69–70 (4 Cir. 1964).

27. Evans v. Cunningham, 335 F.2d 491 (4 Cir. 1964).

28. United States ex rel. Wynn v. Wilkins, 342 F.2d 777 (2d Cir. 1965) (where state courts have fashioned a new judicial remedy to permit factual determination on voluntariness of confessions in view of recent Supreme Court case state prisoner must go back to state court and avail

himself of that remedy even though it was not open to him when he was denied a determination on the merits by the state court previously); Blair v. People of State of California, 340 F.2d 741 (9 Cir., 1965) (when state habeas claim of denial of counsel on appeal was dismissed before the Supreme Court decision in Douglas v. People of State of California the state prisoner must go back into state court to allow the state to consider the case in light of Douglas); Dabney v. Sigler, 345 F.2d 710 (8th Cir., 1965) (held no exhaustion where it appears that the State of Nebraska has recently passed a statute under which this state prisoner could be heard on his constitutional claim even though such a state determination had earlier been applied for and denied); United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2d Cir., 1964); Hunt v. Warden, 335 F.2d 936 (4th Cir., 1964).

term.[29] Of the four, Case v. State of Nebraska is the most explicit. That case involved a State court denial of habeas corpus on the grounds that although the petition had stated a Federal constitutional claim, the State of Nebraska had no procedure, either by its limited habeas corpus or any other remedy, to entertain such claims. Certiorari was granted to test whether the State had an obligation to provide such a remedy.[30] After briefs had been submitted, but before oral argument, the Nebraska Legislature passed a post conviction statute under which petitioner could have his claim heard.[31] This legislative intervention enabled the Court to avoid the constitutional issue and vacate and remand in light of the supervening statute.[32] Justices Clark and Brennan, in separate concurring opinions, however, indicated that the States might well have a con-

stitutional duty to provide some post-conviction remedy for the airing of Federal claims.[33] Aside from the constitutional question both Justices applauded the actions of the Nebraska Legislature in accepting the invitation of the Federal courts to settle Federal claims:

> The desirability of minimizing the necessity for resort by state prisoners to federal habeas corpus is not to be denied. Our federal system entrusts the States with primary responsibility for the administration of their criminal laws. The Fourteenth Amendment and the Supremacy Clause make requirements of fair and just procedures an integral part of those laws, and state procedures should ideally include adequate administration of these guarantees as well. If, by effective processes, the States assumed this bur-

---

**29.** Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965); Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

**30.** "We granted certiorari * * * to decide whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." Case v. State of Nebraska, 381 U.S. 336, at 337, 85 S.Ct. 1486, at 1487 (per curiam).

**31.** Neb.Leg.Bill 836, 75th Session, effective April 12, 1965.

**32.** Cf. Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

**33.** This Court attempts to make no decision on the merits of the issue presented but not decided in Case v. State of Nebraska. It is, of course, a problem that may well have to be met squarely in the future. There are a number of Supreme Court cases indicating that such a duty exists. "The Due Process Clause of the Fourteenth Amendment does require still further protection (after trial and appeal). A state must furnish corrective process to enable a convicted person, even after such proceedings I have outlined to established in fact a

sentence was procured under circumstances which offend 'the fundamental conceptions of justice which lie at the base of our civil and political institutions.'" Taylor v. State of Alabama, 335 U.S. 252, 272, 168 S.Ct. 1415, 1424, 92 L.Ed. 1935 (Frankfurter, J., concurring) (citations omitted). For a brief outline of the argument made for petitioner in the Case case see 381 U.S. at 343, Note 5, 85 S.Ct. at 1490. See Note, Effect of Federal Constitution in Requiring State Post Conviction Remedies, 53 Colum.L.Rev. 1143 (1953). Although it is very possible that such a duty does exist the Court has been reluctant to actually enforce it and instead has either assumed that adequate corrective process did exist within the state or instructed the prisoner to make use of the federal forum. As recently as the Townsend opinion the Court refused to force the issue. "In announcing this test we do not mean to imply that the state courts are required to hold hearings and make findings which satisfy this standard, because such standards are governed to a large extent by state law. (However) * * * the existence of the exhaustion of state remedies requirement * * * lends support to the view that a federal hearing is not always required. It presupposes that the State's adjudication of the constitutional issue can be of aid to the federal court sitting in habeas corpus." 372 U.S., at 313, note 9, 83 S.Ct., at 1487.

den, the exhaustion requirements of 28 U.S.C. § 2254 (1958 ed.) would clearly promote state primacy in the implementation of these guarantees. Of greater importance, it would assure not only that meritorious claims would generally be vindicated without any need for federal court intervention, but that nonmeritorious claims would be fully ventilated, making easier the task of the federal judge if the state prisoner pursued his cause further. See Townsend v. Sain, 372 U.S. 293, 312–318, 83 S.Ct. 745, 9 L.Ed.2d 770. Greater finality would inevitably attach to state court determinations of federal constitutional questions, because further evidentiary hearings on federal habeas corpus would, if the conditions of Townsend v. Sain were met, prove unnecessary. (Footnotes omitted).[34]

The main thrust of arguments encouraging effective State postconviction remedies is that a constitutional claim having been alleged, the petitioner will get a hearing on the merits somewhere along the line, and logically that hearing should be held in the State courts.

 This, coupled with the language in Case, the majority opinion in Townsend and the holdings in Henry v.

State of Mississippi [35] and Jackson v. Denno [36] leads to the inescapable conclusion that the Federal policy concerning "exhaustion" is to encourage and promote State court evidentiary hearings on Federal claims. It therefore follows that the requirements of "exhaustion" have not been met if a state prisoner still has available a State forum in which he can receive an evidentiary hearing. The Court reiterates that "exhaustion" is based on comity and is an effort to promote harmonious Federal-State relations. That, along with the explicit Federal policy announced by the Supreme Court encouraging State hearings, is more than enough to convince this Court that if a West Virginia prisoner is to qualify for Federal habeas corpus relief he must first pursue the proper available State remedy providing for a full evidentiary hearing.

IV. Postconviction Relief in West Virginia.

Traditionally State common law remedies such as habeas corpus and coram nobis have been very narrow in scope.[37] Concepts of automatic waiver and "jurisdiction," such as those disapproved in Fay v. Noia, have often forced State courts to deny consideration on the merits of claims cognizable by Federal habeas corpus.[38] Even when those prob-

34. Case v. State of Nebraska, 381 U.S. 336, at 344–345, 85 S.Ct. 1486, at 757, 14 L.Ed.2d 422.

35. 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965). That case, a direct review of a state criminal conviction, was vacated and remanded to the state court for a *state hearing* to determine whether or not there was intelligent waiver of a constitutional objection to the admissibility of certain evidence seized without a warrant. The interesting thing to note here is that the State court had already held that intelligent waiver existed and the state had no procedure for holding such a post trial hearing of evidence on the question as the case then stood. Nevertheless, the majority urged that such a hearing be held because determination of the facts in the state court was more desirable than a federal habeas corpus hearing.

36. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 was a federal habeas corpus case in which the Court held that the voluntariness of confessions must first be determined by the judge out of the hearing of the jury. There the Court remanded the case to the state court for a hearing to determine the voluntariness claim even though no such hearing was provided for under New York law. It is interesting to note that the New York Court of Appeals fashioned a judicial remedy to make such hearings possible. See United States ex rel. Wynn v. Wilkins, 342 F.2d 777 (2d Cir. 1965). See also Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

37. See Note, 40 N.Y.U.L.Rev. 154 (1965) for an excellent treatment of existing state court remedies and the historical reasons involved.

38. Ibid.

lems have been met, outmoded notions of the conclusiveness of records and burden of proof, held untenable in Townsend v. Sain, have been invoked to dismiss petitions otherwise stating a ground for relief.[39]

Nevertheless, many states have met the challenge, albeit in various ways. A good example of the methods open to the states in adopting a remedy co-extensive with Federal habeas corpus is found in a survey of the law in three sister states which border West Virginia. Maryland has adopted a Post Conviction statute [40] similar to the Uniform Post Conviction Act.[41] Kentucky has enacted, by Rule of Court [42], a remedy much like that used for collateral attack of Federal convictions. Virginia, by a series of judicial pronouncements, has broadened the scope of state habeas corpus to cover Federal constitutional claims.[43] Gradually many states, by case law or statute, have cast aside outmoded obstacles such as automatic waiver and the conclusiveness of records, to provide a meaningful forum for Federal claims.[44]

West Virginia has not enacted specific postconviction legislation to meet the exigencies of complete collateral review. A survey of the case law in the State, however, leads this Court to the conclusion that West Virginia possesses a judicially shaped common law remedy very closely resembling Federal habeas corpus, which, if properly invoked by state prisoners, would provide for full and fair evidentiary hearings and appellate review in determining the merits of constitutional claims.

It appears that both coram nobis and habeas corpus exist in West Virginia. The privilege of the writ of habeas is guaranteed by the State Constitution [45], while the writ of error coram nobis has been preserved by statute to correct errors of fact.[46] Apparently, however, coram nobis has not been used by criminal defendants.[47] This is consistent

---

39. Ibid.

40. Md.Code Ann. Art. 27, §§ 645A–645J (1964 Cum.Supp.).

41. 9B Uniform Laws Ann. 352–359.

42. Ky.R.Cr. 11.42. Compare 28 U.S.C. § 2255.

43. See Griffin v. Cunningham, 205 Va. 349, 355, 136 S.E.2d 840, 845 (1964).

44. Thirteen states have adopted some type of post conviction relief statute. Alaska, R.Crim.P. Rule 35(b); Delaware, Del. Super.Ct.Crim.Proc. Rule 35(a); Florida, Fla.Rules Crim.Proc. 1, F.S.A. ch. 924 Appendix; Illinois, Ill.Rev.Stat., c. 38, §§ 122–1 to 122–7; Kentucky, Ky.Rules Crim.Proc. 11.42; Maine, Me.Rev.Stat. Ann., c. 126, §§ 1–A to 1–G (Supp. 1963); Maryland, Md.Code Ann., Art. 27, §§ 645A to 645J (Supp.1964); Missouri, Mo.Sup.Ct. Rule 27.26, V.A.M.R.; Nebraska, Neb.Leg. Bill 836, 75th Sess., effective April 12, 1965; New Jersey, N.J.Crim.Prac. Rules of Super. and County Cts., Rule 3:10A–2; North Carolina, N.C.Gen.Stat. §§ 15–217 to 15–222 (Supp.1963); Oregon, Ore.Rev.Stat. §§ 138.510–138.680 (1963); Wyoming, Wyo. Stat.Ann. §§ 7–408.1 to 7–408.8 (1963 Cum.Supp.).

The post conviction remedy afforded by these various rules of court and statutes differ. However, in the main, they seem to be the best method for guaranteeing a state remedy coextensive to federal habeas corpus. For an excellent survey of the variations involved in these remedies and a critique of them from the point of view that they somehow fail to encompass the same remedy provided by federal habeas corpus, see Note, 40 N.Y.U.L.Rev. 154 (1965).

45. W.Va.Const., Art. 3, § 4.

46. W.Va.Code Ann., § 5756 (1961 ed.). Although the recently enacted West Virginia Rules of Civil Procedure abolish the writs of error coram nobis and coram vobis, Rule 60(b), it is doubtful that those writs have been abolished insofar as they could be used to attack a criminal conviction. Petitions for these writs do not become separate and collateral civil cases such as habeas corpus. They attach to the former case and become a continuing part thereof. See United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Therefore, the abolition of these writs in civil cases probably does not apply to their use in criminal cases.

47. See Carlin, Correction of Error on Motion, 55 W.Va.L.Rev. 1 (1952).

with the narrow scope of that writ in most American jurisdictions.[48]

Petition for a writ of habeas corpus is the accepted postconviction remedy. The State Constitution and statutes grant original jurisdiction in habeas corpus cases to both the Supreme Court of Appeals [49] and the circuit courts.[50] In addition, the Supreme Court of Appeals has appellate jurisdiction to review, by writ of error, the disposition of any habeas corpus case by a circuit court.[51]

■ Admittedly this Court is unable to state categorically, that, in West Virginia, habeas corpus will lie to test any conviction gained through a deprivation of Federal constitutional rights. The State high court has recently said in dictum that habeas corpus was available to attack any judgment which was wholly or partially void for lack of jurisdic-

tion.[52] From this it could be reasoned that the State courts are still employing the old "jurisdictional" approach to habeas corpus. However, a survey of recent habeas corpus cases does not confirm this view. Relief has been granted to prisoners claiming specific constitutional denials such as the lack of counsel [53] at trial and denial of a transcript for purposes of appeal.[54] Moreover, the West Virginia Supreme Court of Appeals has adopted the Federal waiver standard in habeas corpus cases.[55] Although the Court can point to no case which specifically holds that State habeas corpus will lie to test *any* constitutional denial, the holdings already alluded to and the general tenor of recent opinions, both in West Virginia and other states, lend conclusive support to an assumption that this is the law.[56] With-

---

48. See Note, 40 N.Y.U.L.Rev. 154 (1965).

49. W.Va.Const., Art. 8, § 3; W.Va.Code Ann. § 5324 (1961 ed.).

50. W.Va.Const., Art. 8, § 12; W.Va.Code Ann. § 5196 (1961 ed.).

51. W.Va.Code Ann., § 5787 (1961 ed.).

52. See State ex rel. Massey v. Boles, 140 S.E.2d 608, at 610 (W.Va., 1965).

53. State ex rel. May v. Boles, 139 S.E. 2d 177 (W.Va.1964).

54. State ex rel. Banach v. Boles, 147 W.Va. 850, 131 S.E.2d 722 (1963).

55. State ex rel. May v. Boles, 139 S.E.2d 177 (W.Va.1964).

56. That this is the position of the West Virginia court is strongly suggested in State ex rel. Banach v. Boles, 131 S.E. 2d 722, at 728–729: "Petitioner is presently confined as a result of the wrongful act of the state in denying him the rights guaranteed to him by the Fourteenth Amendment of the Constitution of the United States * * * there being no other method by which to secure to petitioner a vindication of his rights, he is entitled to be discharged upon the writ of habeas corpus heretofore awarded." Several states have broadened the scope of the habeas corpus relief by merely expanding the concept of jurisdiction to allow many constitutional claims to be labelled "jurisdictional" claims. See e.g. Wojculewicz v. Cummings, 145 Conn. 11, 138 A.2d 512, cert. den., 356 U.S. 969,

78 S.Ct. 1010, 2 L.Ed.2d 1075 (1958); Johnson v. Cox, 72 N.M. 55, 380 P.2d 199, cert. den., Johnson v. New Mexico, 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82 (1963); Ex parte Story, 88 Okl.Cr. 358, 203 P.2d 474 (1949); Commonwealth ex rel. Sleighter v. Banmiller, 392 Pa. 133, 139 A.2d 918 (1958); State ex rel. Doxtater v. Murphy, 248 Wis. 593, 22 N.W.2d 685 (1946). Other state courts have completely discarded the jurisdictional approach as a fiction and held that state habeas would lie for constitutional claims. E.g. In re Winchester, 53 Cal.2d 528, 2 Cal.Rptr. 296, 348 P.2d 904, cert. den., 363 U.S. 852, 80 S.Ct. 1631, 4 L.Ed.2d 1734 (1960); Rice v. Davis, 366 S.W.2d 153 (Ky.1963).

It would seem that Justice Holmes' statement concerning habeas corpus would justify either approach as long as the end result met what he thought to be the essence of the writ of habeas corpus. "* * * habeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell.

"The argument for the appellee in substance is that the trial was in a court of competent jurisdiction * * * But * * * (w)hatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no

out a clearcut holding to the contrary, Federal courts will presume that the desirable corrective process referred to here is provided by the State.[57]

Armed with this assumption, the Court surveys the law of West Virginia habeas corpus in determining the manner best suited to invoke this remedy, and at the same time satisfy Federal "exhaustion" requirements regarding evidentiary hearings in the State court.

Although both the West Virginia Supreme Court of Appeals and the circuit courts have original jurisdiction in State habeas corpus, the treatment accorded such a petition in the two forums differs because of the nature of the two courts. The circuit court, a trial court of general jurisdiction, can summon witnesses and hold full evidentiary hearings.[58] In cases brought at this level the return of the respondent is not conclusive of the facts. Hearings to determine facts beyond the return and petition are encouraged in the circuit court.[59] On the other hand, the Supreme Court of Appeals does not appear to have the facilities to hold evidentiary hearings on original writs addressed to it. Only when the record is clear, or when there is a stipulation of facts, has that Court seen fit to grant relief.[60] This is understandable since that Court cannot be expected to grant relief in cases in which important facts remain unresolved. However, the Supreme Court of Appeals has discretionary power to transfer the case to a proper court for hearing.[61]

---

doubt that it embraces the fundamental conception of a fair trial * * * We are not speaking of mere disorder, or mere irregularities in procedure, but of a case where the processes of justice are actually subverted. In such a case, the Federal court has jurisdiction to issue the writ. The fact that the state court still has its general jurisdiction and is otherwise a competent court does not make it impossible to find that a jury has been subjected to intimidation in a particular case. *The loss of jurisdiction is not general, but particular, and proceeds from the control of a hostile influence.*" Frank v. Mangum, 237 U.S. 309, 346–347, 35 S.Ct. 582, 595, 59 L.Ed. 969 (Holmes, J., dissenting) (Emphasis added.)

See 67 W.Va.L.Rev. 234 (1965): "The West Virginia court has awarded habeas corpus relief on the basis of two federal constitutional grounds * * * This provided a significant broadening of the rather limited reach of the traditional state habeas corpus remedy. There appears to be nothing to prevent the court from awarding state habeas corpus relief on the basis of a violation of constitutional rights * * * If May and Banach actually represent a crack in the door, as they appear to, state habeas corpus relief conceivably could be opened to all constitutional objections which may now be advanced in federal courts." Id. at 239.

57. See e.g., Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949).

58. W.Va.Code, §§ 5325, 5329, 5330 (1961 ed.). The latter is particularly in point. "The court or judge before whom the petitioner is brought, after hearing the matter both upon the return and any other evidence, shall either discharge or remand him, or admit him to bail, as may be proper * * *"

The impact of this statute on the function of the Great Writ in West Virginia is ably expressed in Hurley v. Hurley, 71 W.Va. 269, 76 S.E. 438 (1912), where the court stated: "At common law the return in habeas corpus was conclusive; there was no call for issue and trial of fact. Church on Habeas Corpus (2d Ed.) sec. 149. By statute, habeas corpus has been liberalized. 'In this State the court is not precluded by the return from inquiring into the truth of the matters therein alleged.' State ex rel. Neider v. Reuff, 29 W.Va. 751, 2 S.E. 801, 6 Am.St.Rep. 676. The statute provides for trial of fact beyond the return. The court or judge may hear 'the matter both upon the return and any other evidence.' Code 1906, ch. 111, sec. 6." Id., 76 S.E. at 439.

59. See text of note 58 and Wright v. Wright, 78 W.Va. 57, 88 S.E. 606 (1916).

60. This is not true in denial of counsel claims. When the record is silent as to waiver of counsel the Supreme Court of Appeals has followed the federal waiver standard set forth in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed. 2d 70 (1962) and found that no waiver existed or could be presumed from a silent record. See State ex rel. May v. Boles, 139 S.E.2d 177 (W.Va.1964).

61. W.Va.Code Ann., § 5325 (1961 ed.), states inter alia: "If the writ be ordered

It is therefore clear to this Court that a full and fair evidentiary hearing to determine the merits of a constitutional claim will be afforded any West Virginia prisoner who seeks postconviction relief in the proper circuit court. Original applications for the writ in the Supreme Court of Appeals can only result in evidentiary hearings if that court exercises its discretion to make the writ returnable to the proper circuit court. There is no legal compulsion upon the Supreme Court of Appeals to follow this transfer procedure. As a practical matter the circuit court is the forum to petition in order to get a full State court evidentiary hearing.

■ In view of the Federal policy and this Court's understanding of West Virginia law, the Court concludes that all applications for Federal habeas corpus involving the determination of disputed facts must affirmatively state that the petitioner has previously sought resolution of the factual controversy in a proper State forum and thereafter sought appellate review of an adverse determination on this claim before his Federal petition will be entertained on the merits. Failure of such a showing will result in dismissal for failure to exhaust available State remedies.

V. Conclusion.

■ For the foregoing reasons the petition of Jack M. Miller is dismissed. Miller has alleged constitutional deprivations which have been denied by the respondent in answer to an order to show cause. The respondent's answer puts

---

by the supreme court of appeals or a judge thereof, it may be made returnable either before such court *or before a proper court or judge of the county wherein the petitioner is detained.*" (Emphasis added).

A literal reading of the West Virginia statute providing for transfer of the case by the Supreme Court of Appeals to "* * * a proper court or judge of the county wherein the petitioner is detained." (W.Va.Code, § 5325 1961 ed.), appears on its face to deny the Supreme Court of Appeals any discretion in choosing the forum to which it can transfer the case. The statute in its present form was drafted to conform with the decision in Click v. Click, 98 W.Va. 419, 127 S.E. 194 (1925). That case held only that an original writ of habeas corpus petition addressed to a circuit court could not be made returnable to that circuit court unless the person was being illegally detained within the territorial boundaries of that circuit court's jurisdiction. That opinion is based upon the sound theory that allowing prisoners to file and have a hearing in every circuit court of the state, no matter where they were convicted, or incarcerated, would lead to confusion and abuse of the writ. The court found that the statute, as it then existed, could be interpreted to give a circuit court, other than the one in the county of incarceration, jurisdiction to hear a habeas corpus case. It rejected that interpretation, however, on a sound theory of construction. However, this Court is not thoroughly convinced that the same principle need apply to the jurisdiction of the most con- venient circuit court when that court is directed by the Supreme Court of Appeals to hear the evidence and determine the merits of a petition for habeas corpus originally submitted to the Supreme Court of Appeals and transferred according to Code § 5325. In this situation the policy against allowing a hearing in a circuit court other than the one having general jurisdiction over the place where the petitioner is being detained does not exist. There could be no abuse of the writ because the Supreme Court of Appeals itself would designate the most convenient forum for hearing, thereby taking away the possibility of petitioner choosing the forum and filing the same petition in several different circuits. This Court, of course, expresses no opinion concerning how the Supreme Court of Appeals will interpret the statute providing for transfer. It should be noted, however, that there appear to be no reported decisions dealing with the Supreme Court of Appeal's invocation of the discretionary power granted under the statute. Moreover, it also appears as a matter of practice that the Supreme Court of Appeals has not exercised its power under the aforementioned statute. It is submitted that any statutory change in post conviction relief possibly give consideration to allowing either transfer to the convicting court by the Supreme Court of Appeals or original filing of petitions in the convicting forum. Either or both modifications might do much to facilitate the implementation of a modernized system of post conviction review.

Miller's contentions of fact in issue. Once an issue of fact arises it usually must be resolved by an evidentiary hearing. Since Miller has not sought habeas corpus relief in the State circuit where he is incarcerated he has not given the State a fair chance to determine the factual issues in his case. There being a proper forum for factual determination in the State court system, the Court finds that Miller has failed to exhaust available State remedies according to the principles set forth herein.

The petition will therefore be ordered dismissed.