**Douglas ELLIS, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

Civ. A. No. 436–E.

United States District Court
N. D. West Virginia.

March 21, 1966.

John E. Busch, Jr., Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, George H. Mitchell, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Petitioner is serving a one to ten year sentence in the West Virginia Penitentiary for grand larceny. Petitioner has sought and been denied habeas corpus relief from the West Virginia Supreme Court. Although Petitioner has failed to exhaust his State remedies under the rule set out in Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965), his petition had matured to the hearing stage before *Miller* was decided and will be considered on the merits.

Essentially, Petitioner's claim is ternary, namely, (1) flagrant intimidation and coercion by police officers in obtaining a confession, (2) ineffective assistance of counsel appointed at his arraignment, and (3) an involuntarily entered plea.

Because Petitioner's conviction rests on a plea of guilty, the confession and the alleged coercion and intimidation incident to obtaining it is considered in light of its effect in creating an involuntary plea of guilty. It is clear that violation of constitutional rights in obtaining a confession does not *per se* preclude a voluntary plea of guilt.[1] However, the Court must examine the alleged coercion and intimidation to determine if their iniquitous effect survived and continued to the arraignment and therein contaminated the plea.[2]

---

1. See United States v. Morin, 265 F.2d 241 (3 Cir. 1959) where Petitioner "argues that the very fact that a confession was extracted from him during allegedly illegal detention renders his pleas of guilty involuntary and thus nugatory. This argument if followed to its ultimate and logical extreme would result in the anomaly that once an inadmissible confession had been obtained no plea of guilty could stand, while on the other hand a jury could convict if other valid evidence sustained the charge of guilt." at p. 246.

2. See United States ex rel. Perpiglia v. Rundle, 221 F.Supp. 1003 (E.D.Pa.1963) where Petitioner was granted writ based upon the allegation of coerced confession, notwithstanding his representation by counsel and a plea of guilty.

From the testimony of Petitioner and Petitioner's mother and an affidavit by Petitioner's brother the following narrative unfolds.

On the morning of May 8, 1961, five law officers arrived at the home of Petitioner's widowed mother. They asked her where her sons, Roscoe and Douglas, were, and told her they had a warrant for the arrest of the two boys. After having been informed that the boys were in the house asleep, the officers entered the house and placed the two under arrest. The Petitioner and his brother were taken to the Boone County, West Virginia, jail.

At this time Petitioner, who had completed only eight years of education, was 21 years old and his brother was in his teens. Neither Petitioner nor his brother were ever shown an arrest warrant. It appears that Mrs. Ellis' property was searched and certain personal property was confiscated by the police. Mrs. Ellis said she did not object to this search, although she was never shown a search warrant, because she knew the boys had nothing to hide.

Petitioner testified that he was questioned by the officers on the way to jail and then about 11:00 a. m. the same day, after having been in jail approximately an hour. Petitioner says that at this time he requested counsel and was told by the officers that he did not need one. Later the same day Petitioner was confronted with a station wagon containing the tires which Petitioner was accused of having stolen. Petitioner says that he was threatened and called a liar when he stated that he had not seen the tires before.

On the following day, May 9, 1961, Petitioner was taken to the courthouse and again questioned. On May 10, 1961 Petitioner was taken to the local office of the State Police and questioned by State Police officers. Shortly thereafter Petitioner was informed by officers that his mother had been arrested and placed in the Boone County jail.

Mrs. Ellis, Petitioner's mother, testified that she had gone to the Boone County jail in response to a telephone call informing her that her sons had been released and wanted to come home. Mrs. Ellis stated that when she arrived at the jail she was questioned by officers about her sons and then placed in jail. She said she was confined in jail approximately three hours, after which time she was taken before a justice of the peace where she signed "a bond" to secure her release. She claims that at no time was she told of the offense for which she was jailed and that she has heard nothing further concerning her "offense" since her release.

Petitioner's wife, seven months pregnant at the time, accompanied Mrs. Ellis to the jail and was present when Mrs. Ellis was placed in jail.

Petitioner claims that during this period his mother, his wife, his brother and himself were threatened with prison sentences in an effort to get him to confess. It appears from the affidavit of Roscoe Ellis, which accompanied Petitioner's petition, that he was subjected to substantially the same treatment as his brother from the time they were arrested until they were released from the Boone County jail.

After the episode involving Mrs. Ellis, Petitioner's mother, he confessed to having stolen the tires. Petitioner was placed on bond, but then taken to the Logan County jail where he was held three days and questioned concerning other charges before he was released.

Petitioner and his brother were indicted at the September, 1961, term of court. At an undetermined date subsequent to indictment Petitioner entered a plea of not guilty, was assigned a trial date and an attorney was appointed by the state trial court to represent him.

Petitioner claims that his attorney conferred with him on only two occasions, neither time exceeding ten minutes. Petitioner further claims that the attorney, who lived 30 to 35 miles away, made no attempt to investigate the circumstances under which he made his confession, nor were any areas of defense considered. After learning that Petitioner had made

a confession, the attorney allegedly advised Petitioner that he had no choice but to plead guilty. On October 5, 1961, Petitioner pleaded guilty.

The trial court attorney appointed to represent Petitioner on the grand larceny charge in Boone County and a deputy sheriff from Boone County testified on behalf of Respondent.

The trial court appointed attorney testified that he had no recollection of his efforts on behalf of Petitioner, but explained that his conduct, as alleged by Petitioner, was definitely contrary to his customary practice in handling a criminal case.

Petitioner's detention and questioning, and the attendant circumstances, had a profound effect upon his evaluation of his case and the possibility of a fair jury trial. Petitioner, when before the state trial court, under the facts of this case, developed in the testimony before this Court, was confronted with an atmosphere created immediately following his arrest that gave Petitioner only one alternative—go to prison, regardless of guilt or innocence, regardless of trial by jury and oblivious of the availability of a fair and impartial trial court forum. Under the circumstances, Petitioner was tried, convicted, and sentenced when he signed the confession after being subjected to objectionable procedures of interrogation.

Petitioner's initial plea of not guilty, later withdrawn, does not dilute his claim that the improprieties by the officers and the resulting existence of the confession deprived his guilty plea of voluntariness. On the contrary, Petitioner's plea of not guilty is entirely consistent with his prolonged assertion of innocence.

In order to prevent any possible misunderstanding or misconstruction of the holding herein, this ruling is decided upon and limited to the particular facts of this case.

The Court feels that if there had been a showing that Petitioner in fact received meaningful legal assistance from his court appointed counsel, the improprieties by the police may not have been sufficient to taint his guilty plea.

However, the alleged conduct of Petitioner's attorney, not sufficiently met by Respondent, reinforced and magnified Petitioner's belief that his coerced confession had condemned him. Faced with the complexities of a trial by a legal system he had ample reason to mistrust, it is to be expected that Petitioner would be greatly influenced by the hopeless picture presented by his attorney, according to Petitioner's testimony.

To one with only an eighth grade education, the very manner, as testified to, in which the attorney summarily dismissed a trial as futile would destroy all hope of a fair trial, regardless of the presumed innocence of Petitioner.

The Court feels that the totality of circumstances, as alleged and testified to by Petitioner, justify the conclusion that Petitioner's plea was motivated by his attorney's admonition that Petitioner yield to the inevitable and seek leniency by pleading guilty. Petitioner claims he told his attorney that he was innocent and explained the circumstances attending his confession. Respondent has failed to silence those allegations. The attorney's inaction in the face of this claim helped to rob the state trial court proceeding of its judicial character.[3]

The Court finds that the conduct of the officers, the coerced confession and an absence of effective assistance of counsel acted in concert to deprive Petitioner's plea of its voluntary character.

An order will be entered discharging Petitioner from custody.

3. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670 (D.C.C.A.1945), certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002.