Stanley **SHEFTIC**, Appellant,

v.

Otto C. **BOLES**, Warden of the West Virginia State Penitentiary, Appellee.

John Howard **RUNYON**, Jr., Appellant,

v.

Otto C. **BOLES**, Warden of the West Virginia State Penitentiary, Appellee.

Nos. 10493, 10515.

United States Court of Appeals Fourth Circuit.

Argued June 23, 1966.

Decided May 4, 1967.

John D. Phillips, Jr., and Arthur M. Recht, Wheeling, W. Va. (Court-assigned counsel), for appellants.

George H. Mitchell, Asst. Atty. Gen. of West Virginia (C. Donald Robertson, Atty. Gen. of West Virginia, on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and LEWIS, District Judge.

BOREMAN, Circuit Judge:

These are appeals from orders of the United States District Court for the Northern District of West Virginia denying habeas corpus relief to prisoners in custody of the State of West Virginia. Since the same legal issue is present in both cases we consider them together.

Petitioner, Runyon, was indicted on July 3, 1961, in the Circuit Court of Wayne County, West Virginia, for breaking and entering. Counsel was appointed to represent him at trial. He first pleaded not guilty but subsequently changed his plea to guilty and was sentenced to confinement in the state penitentiary at Moundsville, Marshall County, West Virginia, for a term of one to ten years. On October 2, 1965, he filed a petition for a writ of habeas corpus in the Supreme Court of Appeals of West Virginia, charging that he had been denied the effective assistance of counsel. This petition was denied without a hearing on October 18, 1965. Thereafter, on December 14, 1965, Runyon filed a petition for a writ of habeas corpus in the United States District Court which petition was denied by order dated January 12, 1966, and the case was dismissed for failure to exhaust state remedies.

Petitioner, Sheftic, was indicted in April 1941 in Hancock County, West Virginia, on two charges of breaking and entering. He pleaded guilty and was sentenced to confinement in the state penitentiary. On November 4, 1943, the warden of the prison instituted proceedings under the West Virginia Habitual Criminal Statute,[1] charging that Sheftic had four previous felony convictions. After a jury trial in which the sole issue was as to his identity Sheftic was sentenced to life imprisonment. Sheftic has filed various petitions for writs of habeas corpus in the Supreme Court of Appeals of West Virginia. On November 23, 1964, his latest petition filed in that court was denied without a hearing. In essence, his petition charged that the West Virginia statute authorizing the warden to institute recidivist proceedings was void and that the original guilty plea had been coerced. Subsequently Sheftic filed his petition in the court below for a writ of habeas corpus. This petition was denied also on the ground that Sheftic had failed to exhaust his state remedies.

THE DECISION IN MILLER v. BOLES

The district court based its denial of these petitions on its earlier decision in Miller v. Boles, 248 F.Supp. 49 (N.D.W. Va.1965). That decision sought to clarify the guidelines which should govern

1. W.Va.Code, ch. 62, art. 8, § 4 (1931).

federal district courts in determining whether to entertain a state prisoner's petition for habeas corpus relief. The court there pointed out that the recent Supreme Court decisions in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), have extricated the federal habeas corpus remedy from the "procedural pitfalls which often foreclosed relief without a decision on the merits." 248 F.Supp. at 51. The court recognized the teaching of Townsend v. Sain, supra, which directs federal district courts to hold evidentiary hearings whenever the facts are in dispute and where the "habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." 372 U.S. 293 at 312–313, 83 S. Ct. 745, quoted with approval 248 F.Supp. at 53, n. 15.

However, the court in *Miller* concluded that the results reached in Fay v. Noia and Townsend v. Sain were chaotic for federal district judges and that these decisions had engendered criticism of federal encroachment upon "the prerogatives of State criminal justice," 248 F.Supp. 53. It stated its opinion that the solution to the problems created by the expansion of the remedy of federal habeas corpus was the federal policy of exhaustion of remedies embodied in 28 U.S.C. § 2254 as amended. Pub.L.No. 89–711, 80 Stat. 1105 (Nov. 2, 1966). This statute provides in part as noted in the margin below.[2]

The *Miller* court emphasized that the exhaustion doctrine had nothing to do with federal jurisdiction to hear petitions by state prisoners but was grounded on principles of comity and a desire to give state courts the first opportunity to redress invalid state convictions. It then undertook to apply these principles to the practice in West Virginia noting that the usual postconviction remedy in the state was via habeas corpus. The State Constitution and statutes provided for original habeas corpus jurisdiction in both the Supreme Court of Appeals[3] and the circuit courts,[4] with appellate jurisdiction in the Supreme Court of Appeals to review the action of the circuit courts.[5] However, the court ultimately concluded that the application to the circuit court was the appropriate method of seeking postconviction relief, observing that the Supreme Court of Appeals "does not appear to have the facilities to hold evidentiary hearings on original writs addressed to it."[6] 248 F.Supp. at 60. Reasoning that applications to the West Virginia Supreme Court of Appeals would result in hearings only if that court exercised its discretion, the district court determined that "[a]s a practical matter the circuit court is the forum to petition in order to get a full State court evidentiary hearing." 248 F.Supp. at 61. Accordingly, it held that since Miller had filed his petition for habeas corpus only in the Supreme Court of Appeals and not in the circuit court he had not exhausted his state remedies. Miller's petition was dismissed.

2. "(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

3. W.Va.Const., art. VIII, § 3, W.Va.Code, § 53–4–1 (1966).

4. W.Va.Const., art. VIII, § 12, W.Va.Code, § 53–4–1 (1966).

5. W.Va.Code § 58–5–1(e) (1966).

6. The court pointed out, however, that the Supreme Court of Appeals had the power to transfer the case to an appropriate court for a hearing. W.Va.Code, § 53–4–2 (1966).

In dismissing the petitions of prisoners Runyon and Sheftic in the instant cases, the district court simply stated that its action was based on its decision in *Miller*. Counsel for these prisoners argue that the prisoners chose one of two alternative methods available under state law to attack their convictions and that they are not required to exhaust both alternatives to satisfy § 2254; that it would be futile to expect the circuit court to grant hearings after the Supreme Court of Appeals had denied the prisoners relief on the identical claims they would urge before the circuit court; and, that the court in Miller v. Boles, supra, 248 F.Supp. 49, makes two erroneous assumptions: (1) that the scope of habeas corpus in West Virginia is akin to federal habeas corpus, and (2) that the circuit courts do grant full and fair evidentiary hearings. Petitioners' counsel cite two recent decisions of the West Virginia Supreme Court of Appeals to support their contention that there is much confusion as to whether all constitutional violations can be raised via state habeas corpus.[7] It was stated to us during argument that since the district court's decision in Miller v. Boles 111 petitions for habeas corpus have been filed in the Circuit Court of Marshall County, said county being the site of the state penitentiary, and only one has been granted. It is urged that as a practical matter it is virtually impossible to secure an evidentiary hearing in the West Virginia state courts.

We conclude that these judgments of the district court in the instant cases should be reversed and that the decision in Miller v. Boles, from which no appeal was taken, must be disapproved.

When these prisoners filed their petitions for habeas corpus in the Supreme Court of Appeals they were utilizing an avenue of relief opened to them by both the West Virginia Constitution and statutes.[8] No law or constitutional provision required them to first seek habeas corpus relief in any circuit court of West Virginia. The only requirement that prisoners first present their petitions for writs of habeas corpus in the state's circuit courts is found in the decision in the *Miller* case where the court attempted to apply the principle of comity embodied in 28 U.S.C. § 2254, despite the provision in the West Virginia Constitution that application could be made originally to the Supreme Court of Appeals.[9]

While the Supreme Court of the United States has not decided this precise question it has held in other circumstances that where two alternative methods exist it is necessary to utilize only one in order to give the state courts an opportunity to consider and pass upon the matter presented. See Brown v. Allen, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950); Wade v. Mayo, 334 U.S. 672, 677, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948). In United States ex rel. Almeida v. Baldi, 195 F.2d

7. State ex rel. Scott v. Boles, W.Va., 147 S.E.2d 486 (1966); State ex rel. Smith v. Boles, W.Va., 146 S.E.2d 585 (1965).

8. See notes 3, 4, and 5.

9. Subsequent to the decision in Miller v. Boles, supra, and subsequent to the presentation of arguments on this appeal the legislature of West Virginia revised the habeas corpus law and postconviction procedure, reaffirmed the constitutional provision vesting original jurisdiction in the state Supreme Court by giving that court authority to grant the writ in the first instance, hold hearings and/or take evidence upon the return of such writ. The legislature did not accept the formula of Miller v. Boles and, at least by implication, rejected such approach. Enrolled

S.B. No. 38 (Jan. 25, 1967), amending West Virginia Code, chapter 53, by adding thereto a new Article 4A. This amendment provides that West Virginia prisoners may now raise federal constitutional issues in the state courts, W.Va. Code, § 53–4A–1(a) (1967 amendment); and that they must be given a full and fair evidentiary hearing, W.Va.Code, § 53–4A–7(a) (1967 amendment). The amendment further provides that the court hearing the matter must make findings of fact, state conclusions of law and the grounds, state or federal, on which resolution of the prisoner's claim is based. W. Va.Code, § 53–4A–7(c) (1967 amendment). This 1967 amendment appears to afford adequate postconviction remedies to West Virginia prisoners.

815, 33 A.L.R.2d 1407 (3 Cir. 1952), it was held that a petition for a writ of habeas corpus to the Supreme Court of Pennsylvania and the denial of certiorari by the United States Supreme Court were sufficient to exhaust state remedies despite the fact that the lower courts of the state could entertain petitions for writs of habeas corpus. The court explained that while a denial of habeas corpus was not res judicata "we are nonetheless of the opinion that no lower Pennsylvania Court could be reasonably expected, in view of the action of the Supreme Court of Pennsylvania and of the Supreme Court of the United States, to grant the writ to Almeida." Id. at 824. See Lane v. Warden, Maryland Penitentiary, 320 F. 2d 179 (4 Cir. 1963).

While the 1967 amendment to the West Virginia statute clearly states that a matter will not be considered to have been previously adjudicated unless there has been a full and fair hearing in the state courts, or a waiver by the prisoner, we do not feel that these prisoners should now be relegated to the state courts.

In Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), the Supreme Court, after *granting* cer- tiorari to determine whether Nebraska had to provide its prisoners with a pro- cedure to raise federal constitutional is- sues, took notice of a Nebraska legislative amendment providing such a remedy and dismissed the writ and remanded to the Supreme Court of Nebraska. However, that case is *distinguishable from* the cases here on appeal. The Nebraska Su- preme Court had previously held it had no authority to hear the prisoner's case, while the Supreme Court of Appeals of West Virginia clearly had such authority, even prior to the recent amendment. In

addition, in Case v. State of Nebraska, the prisoner had not reached the lower federal courts and there was no real issue of exhaustion of remedies. In the in- stant case the prisoners are in the federal courts and the state has had ample op- portunity to pass on their claims for re- lief. While there has been no decision on the merits in the cases before us we think that the comity principles embodied in § 2254 do not require a return of these cases to the state courts for presentation of the identical claims anew.

These cases at bar are also distinguish- able from White v. Swenson, D.C., 261 F. Supp. 42 (1966), a decision by the federal district court for Western Missouri sit- ting en banc. The court indicated that the state courts should be given every opportunity to rule on the merits of the prisoner's claim before the federal courts entertained habeas corpus petitions. However, that court was not confronted with the situation [10] where, as here, state prisoners have reasonably satisfied every possible demand made upon them by West Virginia law as it existed at the time they filed their petitions with the Supreme Court of Appeals for postconviction re- lief. These prisoners have waited too long to now be told to return to the state courts of West Virginia with the same claims they presented there as early as 1964. Any tangential benefits which might accrue to the cause of federalism by directing these prisoners back to the state courts are greatly outweighed by the real benefit to these prisoners by per- mitting them to finally present their claims in the federal courts. The judg- ments of the district court will be re- versed and these cases remanded to that court for further proceedings consistent with this opinion.

Reversed and remanded.

---

10. The actual issue before the court in White v. Swenson, supra, was whether a state prisoner whose appeal had been dis- missed in the state courts for failure to timely move for a new trial had exhaust- ed his state remedies. The court held that he should file a motion for state postconviction relief before coming to the federal courts. 261 F.Supp. 56–57.