Bonnie June HAMRIC, Appellee,

v.

June R. BAILEY, Superintendent of the
West Virginia State Prison for
Women, Appellant.

No. 11316.

United States Court of Appeals
Fourth Circuit.

Argued June 20, 1967.

Decided Nov. 7, 1967.

Leo Catsonis, Asst. Atty. Gen. of West Virginia (C. Donald Robertson, Atty. Gen., of West Virginia, and Fred M. Frisk, Jr., Asst. Atty. Gen. of West Virginia, on the brief), for appellant.

Homer A. Holt, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on the brief), for appellee.

Before BOREMAN, BRYAN, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Petitioner, Bonnie June Hamric, was found guilty of second degree murder for shooting Glenn E. Winters on September 7, 1964. She was sentenced to an indeterminate term of five to eighteen years. On appeal, her judgment of conviction was affirmed. State v. Hamric, 151 W.Va. ——, 151 S.E.2d 252 (1966). She then sought a writ of habeas corpus from the district court, which, after plenary hearing, was granted, with leave to the State of West Virginia to retry her within three months if it should so elect. Hamric v. Bailey, 274 F.Supp. 240 (S.D.W.Va.1967). The State has appealed, and we affirm.

The facts are fully stated in the opinions of the Supreme Court of Appeals of West Virginia and the district court, and need not be restated in detail here. It is sufficient to say that the deceased, a neighbor of petitioner, was concededly shot by her at night when petitioner's husband, a deputy sheriff, was not at home. Petitioner claimed that the homicide occurred when she fired a shotgun at a window, covered by a venetian blind and closed draperies in a first floor room of her home, upon hearing the blind and draperies moving. Earlier in the evening she had become agitated by hearing the window raised. The deceased, who was somewhere on the outside, was hit by the shotgun charge and died some days later. Petitioner contended, at her trial, that the deceased was at the window, presumably seeking illegal entrance to the house, when she shot him, and that she acted in self-defense. The State, however, adduced evidence, in the form of dying declarations of the deceased, that he was on his side of the hedge or fence separating the adjoining properties when he was shot, and the State advanced the theory that petitioner shot the deceased as a result of deliberate aim. The hedge was ten feet from petitioner's house and over seventeen feet from the adjoining house.

After the shooting, it was established that the window of petitioner's home was raised three to five inches, that the shotgun charge had gone through the closed portion of the window, both glass and sash, as well as the blind and draperies, and that particles of wood and glass from the window were upon the ground outside of the house for a distance of three feet. Fatally wounded, but not dead, the deceased crawled to his trailer, parked behind the adjoining house, after he was shot, where he telephoned for an ambulance.

A laboratory examination of the clothes worn by the deceased when he was shot was made, and the findings resulting from the examination were encompassed in a written report. The examination disclosed slivers of wood and glass on the deceased's shirt, and the particles themselves were preserved. Upon his finding that petitioner's counsel were not aware of the fact of this examination and the existence of the report and the particles until the jury had retired to consider its verdict, the district judge granted the writ, in reliance on Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that the suppression of evi-

dence favorable to an accused violates due process where the evidence is material either to guilt or punishment, irrespective of the *bona fides* of the prosecutor. Reliance was also placed on Barbee v. Warden, Maryland Penitentiary, 331 F. 2d 842 (4 Cir. 1964). In this appeal, the State contends that the district judge should have abstained from the exercise of his habeas corpus jurisdiction because petitioner failed to exhaust available state remedies and that, on the facts of this record, there was no suppression such as to deny petitioner's right to a fair trial.

The district judge concluded that petitioner had exhausted available state remedies, and in this ruling we think he was correct. Irrespective of whether they might have learned of the results of the laboratory examination of the deceased's clothes and obtained access to the written report, the fact is that, as the district judge correctly found, petitioner's counsel subjectively were not aware of them until the jury had retired to deliberate on its verdict. When a verdict of guilty was returned, petitioner's counsel moved for a new trial, *inter alia,* on the ground of suppression of evidence, citing the results of the examination and the report and on the ground of the knowing use of false evidence. In the direct appeal, the issue of suppression of evidence was pressed in the Supreme Court of Appeals in the original application for a writ of error; and it, and the claim of knowing use of false evidence, were asserted in the application for rehearing which was denied.

The trial court and the Supreme Court of Appeals dealt with the contentions under the restrictive and inflexible rules applicable to after-discovered evidence. The Court of Appeals made no finding that petitioner's counsel knew of this evidence before the jury had retired, but concluded that a motion based thereon should have been made before the jury returned its verdict, that the information could have been ascertained by the use of due diligence before or during the trial, and that the materiality of the

evidence was questionable because it could be used only to discredit or impeach witnesses and was of doubtful value, even for that purpose. State v. Hamric, 151 S.E.2d, at 265. The dissenting judge, although agreeing that petitioner had not made a proper showing for a new trial on the ground of after-discovered evidence, concluded that deliberate suppression of evidence had been shown, in that the evidence was of "crucial importance to further corroborate the defendant's recital of the circumstances," and that the State had adduced testimony that no slivers of wood and glass were found on the deceased's shirt while, in fact, the State possessed information at the time the trial began to the contrary. Id., pp. 275–276.

It thus appears that both the issues of alleged suppression of evidence such as to violate the right to a fair trial and knowing use of false evidence, were litigated in the direct appeal. Grundler v. State of North Carolina, 283 F.2d 798 (4 Cir. 1960), does not require more by way of exhaustion. See also Edmondson v. Warden, Maryland Penitentiary, 335 F.2d 608, 609 (4 Cir. 1964); United States ex rel. Frinks v. Barwick, 331 F.2d 597 (4 Cir. 1964). Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965), which suggested to the contrary, was expressly disapproved by us in Sheftic v. Boles, 377 F.2d 423 (4 Cir. 1967).

■■ To deal properly with the conclusion of the district judge that petitioner's constitutional right to a fair trial was denied, we must first state further facts. The beginning point is a consideration of the materiality of the evidence. In her direct appeal, a majority of the judges of the Supreme Court of Appeals of West Virginia concluded that the evidence would not have affected the outcome of petitioner's trial, although the majority opinion recognized that under the law of West Virginia self-defense was an available defense and petitioner was not required to retreat from an illegal intrusion because she was in her own home. Sharply in contrast, the dissenting judge termed the evidence of "crucial

importance." The district judge had no doubt as to the materiality of the evidence; nor do we on the facts, even as we have briefly stated them. Whether the deceased was trying to make entrance to the window, or whether he was at least ten feet away from the petitioner's house on the other side of the hedge bordering her property, would appear to be the determination vital to her claim of self-defense. The presence of particles of wood and glass on his shirt would tend to prove that the deceased was at the window. Certainly, we would be engaging in speculation to say that the undisclosed evidence would not have influenced the fact-finder, and we feel free to disagree with the majority of the Supreme Court of Appeals of West Virginia in this regard, since we are concerned with the redress of a claimed violation of a federal constitutional right. Although the findings of fact of a state court are presumptively correct in a federal habeas corpus proceeding, 28 U.S.C.A. § 2254, it is necessary for the protection of federal rights that a federal court make an independent determination of the legal effect of the facts upon which rest a claimed violation of a federal right. Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The necessity for such a determination is especially clear in the case before us, where the state court's ruling on the issue of materiality was made according to the strict standards governing after-discovered evidence under state law and apparently without regard to the federal rights asserted.

We think that Brady v. State of Maryland, supra, and Barbee v. Warden, Maryland Penitentiary, supra, are applicable and dispositive of this case. We have concluded that the evidence was material and favorable to petitioner, and our examination of the record satisfies us that it was suppressed. The record of the original trial may be searched in vain for any mention of the results of the laboratory tests or any reference to the report prior to the time that the jury retired. Nor does the record disclose that petitioner's counsel knew of the undisclosed evidence prior to then. There was testimony by one State representative that prior to trial one of petitioner's counsel was present in the laboratory of the Criminal Investigation Bureau where the tests were conducted and was even shown the vial in which the particles of glass and wood were contained. But it is significant that others also present, including the State representative who had actual custody of the vial, made no such claim. That they were so advised was denied by petitioner's counsel, who claimed that they learned of the undisclosed evidence only when one of them, after the jury had retired, inquired of one of the State troopers present in the courtroom and elicited the fact that particles of glass and wood were found on the shirt. The opinion of the district judge treated petitioner's counsel as lacking knowledge of the undisclosed evidence. We cannot treat his implied finding as clearly erroneous on this record.

■ Finally, on the issue of suppression, we conclude that disclosure of the undisclosed evidence after the jury had retired was too late to overcome the requirements of *Brady*. If it is incumbent on the State to disclose evidence favorable to an accused, manifestly, that disclosure to be effective must be made at a time when the disclosure would be of value to the accused. Possibly the jury's deliberations could be interrupted for the purpose of taking additional testimony, but the potential prejudicial effect to an accused of such an extraordinary procedure persuades us that *Brady*, to be given vitality, must be interpreted to require disclosure, at least, before the taking of the accused's evidence is complete.

There is another basis for decision of this case, i. e., the knowing use of false evidence. At the original trial, the prosecution called a brother of the deceased, who testified, on direct examination, that he had examined the shirt worn by the deceased at the time of the shooting. The brother was asked specifically if he had examined the shirt for the presence of glass and wood; he said that he had, and answered positively that there was

no glass or wood on the shirt. Another witness called was the ambulance driver who took the deceased from his trailer to the hospital. He, too, was asked if he had examined the deceased's shirt to see if there was any glass or wood on it and he, too, stated that he had examined the shirt, as well as the body and other clothes. When asked whether glass or wood had been found on the shirt, he answered, "not that I saw."

At the habeas corpus hearing, it was established that, in addition to the laboratory report and the knowledge of the examiner, another state policeman who was present when the shirt was examined knew that there had been found a piece of glass and a piece of wood on it. This witness, although present, was not called at the original trial and, in spite of the knowledge of what his testimony would be if called, as well as the results of the laboratory examination, the testimony of the brother and the ambulance driver was used.

██ Evidence may be false either because it is perjured, or, though not itself factually inaccurate, because it creates a false impression of facts which are known not to be true. We do not suggest that the testimony of the witnesses in the instant case was perjured; their mistake may well have been due to their lack of perception, rather than to a lack of veracity. We recognize that many of the cases which have found a violation of due process where false evidence has been knowingly used by the prosecution involved perjured testimony. See, e. g., Mooney v. Holohan, 294 U:S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1934); Napue v. People of State of Illinois, supra. However, more recently, in Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), the Supreme Court held that due

process is violated not only where the prosecution uses perjured testimony to support its case, but also where it uses evidence which it knows creates a false impression of a material fact.

In that case, involving a murder resulting from a brutal sexual attack, the prosecution created the false impression that large, dark reddish-brown stains on underclothing allegedly worn by the accused, were those of human blood, when in fact the prosecution knew that they were paint stains. Although the prosecution produced expert testimony to support its theory of the origin of the stains, there is no suggestion in the Supreme Court's opinion that the Court considered this testimony to have been perjured. Rather, the basis of the decision was that due process requires that the prosecution refrain from deliberately misrepresenting the truth when presenting its case.

Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), is not to the contrary. In that case a majority of the Court[1] found that conviction not tainted by the knowing use of false evidence under the following circumstances. In a rape case, Foster, a witness for the prosecution, was asked on cross examination whether he had taken the prosecutrix to a lonely woods with the intent of having sexual intercourse with her. He answered that he had not. He did not add that he had in fact had sexual intercourse with her after arriving at the woods (and shortly before the alleged rape), and the prosecution did not bring this point out even though it knew that he had.

The statement made by the witness in *Giles* is similar to statements made by the witnesses in the instant case in that it may have created a false impression as to the actual facts as known to the

---

1. There was no majority opinion in *Giles*, and in fact through a combination of three different opinions, each resting on different grounds, the case was remanded for a determination of the validity of petitioner's conviction. However, in a dissent in which three other Justices joined, Mr. Justice Harlan attacked the finding made in the plurality opinion that the prosecution's failure to disclose the fact that Foster had sexual intercourse with the prosecutrix violated due process. Mr. Justice White, who in a separate opinion concurred in the judgment of the Court remanding the case, specifically agreed with the dissent on this point.

prosecution. However, *Giles* is clearly distinguishable from the case before us in that the fact not disclosed by the prosecution was not material to the issues in the case. After discussing the admissibility of the evidence concerning the relationship between Foster and the prosecutrix—itself a highly questionable point—Mr. Justice Harlan stated:

> "Far more important from a federal standpoint, evidence of Foster's relations with the girl, even if admissible, could not have been substantially relevant to the principal factual issues at the trial. *Its omission did not discolor the meaning of controlling facts.*" (emphasis supplied) Id., p. 112, 87 S. Ct. p. 816.

Conversely, in the case which we are now called upon to decide, the prosecution's use of the challenged testimony gave a false impression as to facts integrally connected with the defendant's claim that she acted in self-defense.[2]

The instant case is analogous to *Miller*, and a proper one to apply the principle enunciated therein. Irrespective of the lack of certainty as to whether the glass and wood on the deceased's shirt came from the window and sash of petitioner's house (the decedent was engaged in the construction business and presumably the glass and wood particles on his shirt could have come from this source), the fact is that there were particles of glass and wood on his shirt. It was improper, under the facts of this case, for the first witness to be interrogated on direct examination such as to elicit the response that there were no particles of glass and wood on the shirt, and the second interrogated in an area where his answer, even if perfectly true, created the impression of the correctness of the testimony of the first witness. Even if done by inadvertence, rather than by design, or even if the responses caused surprise, it was incumbent on the prosecutor to adduce the evidence to the contrary on this crucial fact. Since he did not, the Fourteenth Amendment will not permit this conviction to stand.

Affirmed.

---

2. By distinguishing *Giles* on the ground of the materiality of the evidence involved, we do not suggest that where an attack is made on a conviction because of the use of *perjured* testimony, a requirement of materiality will necessarily be imposed.