STATE OF WEST VIRGINIA

*v.*

GEORGE R. COWAN

(No. 13205)

Submitted May 8, 1973.        Decided July 10, 1973.

Dissenting Opinion July 10, 1973.

*Kennad L. Skeen, Larry L. Skeen,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *James S. Arnold,* Assistant Attorney General, for defendant in error.

SPROUSE, JUSTICE:

This case involves an appeal by the defendant, George R. Cowan, from a final order of the Circuit Court of Jackson County, by which order the circuit court entered judgment upon a jury verdict finding the defendant guilty of armed robbery. The defendant was sentenced to a term of ten years in the West Virginia Penitentiary.

The defendant alleges several errors were committed during the trial of the case, but on final submission for this review, he advances only two alleged errors. One relates to the denial by the trial court of a self-defense instruction, and the second concerns the prosecution's use on cross-examination of a letter written by the defendant. The prosecuting attorney obtained the letter during the course of the trial, and did not make it available to the defense counsel, although a motion had been made and granted under provisions of Code, 1931, 62-1B-2, as amended, for disclosure of any of defendant's written statements.

The defendant was found guilty of the armed robbery of Dana Munday. The alleged robbery occurred on August 16, 1971. Dana Munday, 70 years of age, lived in a mobile home in Sandyville, Jackson County. Sometimes cleaning Munday's mobile home and on occasion spending the night there was Freda Taylor, an 18-year old girl, uneducated to the point she could not read. On the day of the alleged robbery, Munday and Freda Taylor travelled together in

his car to Parkersburg. He was to visit briefly with his son there.

After visiting his son in the morning, he and Freda Taylor visited in the City of Parkesburg and some time in the afternoon ended up in a bar. Shortly prior to that Munday had met Sandra Starkey, a 14-year old girl, and asked her to return with him for a party in Jackson County. While she and her aunt, who was with her, took the offer under consideration, Munday and Taylor went to the bar.

Inside the bar Munday eventually approached a group of young men and a young woman in a booth; among them was the defendant, George Cowan, a 21-year old man. He apparently asked George Cowan and the young lady with him to come to Jackson County for a party and, not succeeding, asked Cowan if he would attend such a party with Munday, Taylor and Sandra Starkey. Although Cowan did not at that time know either of the young girls, he finally agreed. Munday found Sandra and the four of them travelled to Sandyville. They stopped twice during the automobile trip; once to purchase wine and another time to purchase beer, Munday paying for all of the refreshments. During the drive, the young ladies traded places so that Freda Taylor was riding with George Cowan and Sandra Starkey was in the front seat with Dana Munday. Freda Taylor and George Cowan struck up an amorous relationship.

There is some conflict of evidence as to the exact course of events in the mobile home, but a fair summary of the evidence places George Cowan and Freda Taylor fairly quickly in the bedroom of the mobile home; whereas, Munday and the young Starkey girl remained in the front room. Cowan and Taylor were in the bedroom for half an hour and engaged in sexual intercourse. Munday showed Sandra Starkey a rifle he kept in the bedroom. He put the rifle back in the closet after showing it to her. According to Starkey's testimony, he attempted

to get her to kiss him and to join him in watching the other couple, both of which requests she refused.

When the defendant Cowan re-entered the living room from the bedroom, the victim, Munday, was still attempting to have the young Starkey girl engage in an amorous relationship, but she was still refusing his advances. Cowan told Munday to leave the girl alone. Munday, according to his own testimony, then said he would take her home and Munday started for the bedroom. According to Starkey's testimony, "Dana started for the bedroom and I hollered, 'George, there is a gun in there'." Cowan testified, "Sandra yelled, Look out, he is going after that gun. * * * I picked up the knife and I run to Dan [Dana], grabbed him by the back of the shirt; * * * I put the knife to his neck * * * and I told him, I says, No, you are not going to shoot me; and he got kinda nervous; well, I was nervous, too, * * * ."

The evidence is clear that, holding a kitchen knife against the victim's head, Cowan ordered Sandra Starkey to take his car keys and his billfold. He then tore the telephone from the wall and left the mobile home, taking the two girls with him. Altogether, taken from the victim were his car keys, $30.00 in cash, the beer and the wine from the refrigerator, and the rifle from the bedroom.

Several months prior to the trial in the case, defendant, by counsel, moved under the provisions of Code, 1931, 62-1B-2, as amended, to examine and copy evidence including any written and recorded statements made by the defendant. The trial court granted the motion and ordered: "That defendant's counsel, within a reasonable time, be furnished with a complete list of all witnesses, including their addresses, *and any statements, either oral or written, made by the defendant, intended to be used by the Prosecuting Attorney of Jackson County, West Virginia, or to be subpoenaed by the said Prosecuting Attorney against the defendant in any trial* under the above indictment." (Italics supplied.)

The trial was on November 3, 1971, and the State presented part of its evidence in the morning. During the noon recess, the prosecuting attorney came into the possession of a letter written by the defendant Cowan to Sandra Starkey, while both were in their respective cells in the county jail. After the noon recess, the State called four additional prosecution witnesses and rested. The defense then called the defendant as the first witness. After the direct examination, the prosecuting attorney immediately on cross-examination inquired as to whether the defendant had written the letter in question, reading it in its entirety in the presence of the jury. The defendant admitted that he had written the letter, which reads as follows:

"This is what I put in my statement. We left the laundrymat and went to the whiskey store. Dana Monday got a pint of wine for Fredia and I went across the street to get some cigarettes and pop. I told them the cigarettes were for me because you are under age. OK? When I come back you were in the front seat and Fredia was in the back where I was setting. We left there and went to Sandyville. We stopped at a beer joint and Dana gave me money to get beer. We then went to his trailer. I told Ken and Larry that I took Fredia into the bedroom and screwed her. I told them that Dana came in while we were screwing. Now this is what you have to remember! When we come out of the bedroom Dana was trying to get you to let him screw you. You wasn't going to let him. I told Dana to let you alone. He said for me to shut up or he would shot me. I turn around and started to go back to the kitchen table where I was setting and you said (watch out George he is going to get that gun!) I grabbed a knife and made him sit down in the chair. I told you to get his car keys. The rest you know! OK. Just remember to say that he was going to shoot me and everything will be alright. I'm really sorry for getting you into this mess. I guess you are getting a good laugh out of that, but I really mean it. There is no use crying about it now, but I did want you to know that I'm sorry! I don't have any cigarettes to send you, but I will get some somehow, even

if I have to rob someone over here to get them. Just hang in there for awhile. Hey, remember you said you would write me, why didn't you. I kept waiting to hear from you but never did. Dana Monday is supposed to be in the hospital. He is going to have his stomach taken out."

The defense counsel made a general objection to the use of the statement and, at the conclusion of the defendant's testimony, moved for a mistrial on the basis that the prosecuting attorney had not furnished the letter to him prior to its use. The defense contended this was in violation of the court's pre-trial order requiring the prosecuting attorney to furnish evidence, including written statements intended to be used at the trial. The court overruled the motion; the case was completed, and a verdict of guilty returned by the jury.

While it is not inconceivable in a given factual situation that there could be a proper defense of self-defense to a prosecution for armed robbery, such a possibility strains the imagination. Under no interpretation of the evidence in the case at hand can the armed robbery of Dana Munday be justified on the theory of self-defense. The trial court certainly acted properly in denying the instruction based on such theory.

The only contention then with which we must deal is that relating to the use by the prosecuting attorney of George Cowan's handwritten letter without first having revealed its existence and contents to defense counsel. The appellant and the State, in presenting this issue, both argue in part the doctrine of prosecutorial suppression of evidence. This doctrine has evolved from numerous decisions, but principally from *Brady v. Maryland,* 373 U.S. 83; *Giles v. Maryland,* 386 U.S. 66; *United States v. Keogh,* 391 F.2d 138 (2d Cir.), *on remand* 289 F. Supp. 265 (D.C.N.Y.), *aff'd* 417 F.2d 885 (2d Cir.); and numerous state decisions including *State v. Smith,* 156 W. Va. 385, 193 S.E.2d 550.

The *Brady* line of decisions does not relate to the failure of the prosecutor to reveal evidence later used at trial by

the prosecutor for the purpose of convicting a defendant. These decisions deal with evidence the existence of which had not been revealed to the defendant and not used at trial. The rules involved in these cases make it constitutionally mandatory that the prosecution advise the defense of evidence in its possession which might be favorable or exculpatory to the defendant. These decisions have gone no further, however, than a required revelation of evidence which might exculpate the defendant.

Disclosure is required even in the absence of discovery motions. The most articulated standard is the one announced in the *Keogh* case where the court defined three categories of unconstitutional prosecutorial suppression: (1) Deliberate bad faith suppression for the very purpose of obstructing the defense, or the intentional failure to disclose evidence whose high probative value to the defense could not have escaped the prosecutor's attention; (2) deliberate refusal to honor a request for evidence which is material to guilt or punishment irrespective of the good or bad faith of the prosecutor in refusing the request; and (3) suppression which is not deliberate and where no request was made, but where hindsight discloses that such evidence could have been put to significant use.

The Supreme Court in *Giles* specifically declined to consider whether the unconstitutional suppression rule extends to all evidence which might in some fashion be useful to the defense. *Giles v. Maryland,* 386 U.S. 66.

In *State v. Smith, supra,* this Court based its decision in part on *Brady.* However, in requiring the prosecuting attorney to make available for defendant's inspection parts of a marijuana plant in a marijuana prosecution, the Court was dealing solely with the type of evidence that could have exculpated the defendant; i.e., examination of the plant confiscated from the defendant might have reflected that it was only that part of the marijuana plant which was not illegal to possess.

At common law, there was no pre-trial discovery right for a defendant in a criminal trial. *Abdell v.*

*Commonwealth,* 173 Va. 458, 2 S.E.2d 293; 23 AM. JUR. 2d *Depositions and Discovery,* Section 307, page 712. Even at common law, however, the rule was developed that a trial court had inherent power and discretion to require pre-trial discovery. 23 AM. JUR. 2d, *Depositions and Discovery,* Section 308, page 713. Although there is at least one exception (see *Cunningham v. State,* 254 So. 2d 391 (Fla.) ), practically all of the modern courts writing on the issue hold that the denial of pre-trial discovery in favor of the defendant does not involve a constitutional question, rather is controlled by statute or discretion of the court. 23 AM. JUR. 2d, *Depositions and Discovery,* Section 312, page 721. Whatever the rule has been in the past, the issue is now controlled in this State by Code, 1931, 62-1B-2, enacted by our Legislature in 1965. This section provides:

> "Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to examine and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, which are known by the prosecuting attorney to be within the possession, custody or control of the State, (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, which are known by the prosecuting attorney to be within the possession, custody or control of the State, and (3) books, papers, or tangible objects belonging to or seized from the defendant which are known by the prosecuting attorney to be within the possession, custody or control of the State."

Under this language, the trial court appears to have discretion concerning the granting of pre-trial discovery motions and this is the general rule under similar statutes of other states. See Annot., 7 A.L.R.3d 8, 77-88. Cases dealing with the right to pre-trial inspection of letters or notes written by defendant are of little utility in determining that issue as presented here. The courts of other jurisdictions have decided such cases variously

depending on the facts and sometimes reach different conclusions on similar factual circumstances. Annot., 7 A.L.R.3d 8, 120 and cases cited therein. The issue of prosecutorial non-compliance with a pre-trial discovery order should not, therefore, be determined on the basis of the type of evidence withheld by the prosecution. Whether the failure to disclose is a fatal non-compliance with a pre-trial order depends on its prejudicial effect on the preparation and presentation of the defendant's case. In this connection, it has been held and it appears to be a sound rule that the value of evidence which the defendant has requested to inspect is not for the prosecutor to decide, but rather is a question for the judgment of the defense under the exercise of proper discretion by the court. *People v. Allen,* 47 Ill. 2d 57, 264 N.E.2d 184.

A defense motion for examination of any relevant evidence under Code, 1931, 62-1B-2, as amended, must be granted if it is the type of evidence exculpatory in nature and meeting one of the requirements of *Keogh.* Evidence intended for use by the prosecuting attorney at trial for the purpose of proving guilt is also available for inspection by the defense in the discretion of the court and upon motion under the provisions of Code, 1931, 62-1B-2, as amended.

The trial court in the instant case granted the defense motion for pre-trial inspection. The State shortly thereafter complied with the court's order by making available to the defense the information then in the possession of the prosecuting attorney. Not to have complied with the order of the court would have been prejudicial error. *Cunningham v. State, supra; Lowell v. State,* 253 So. 2d 448 (Fla.). In the *Cunningham* case, the prosecutor, responding to a discovery motion, made available evidence in its possession. Not included, however, was a pair of sunglasses. The defendant who had been accused of rape was said to have been wearing sunglasses, and this was a crucial element of identification. At the trial, the prosecutor introduced the sunglasses

without having disclosed the possession of them to appellant. The court said:

> " * * * It well may be that such nondisclosure was the result of inadvertence, oversight, or error on the part of the law enforcement officers or the prosecuting attorney. The fact remains, however, that the evidence so withheld was a critical item of proof in the case, and its reception into evidence during the trial could have had no effect other than to surprise defendant in the conduct of his defense and present a factual issue which he was unprepared to meet." *Cunningham v. State*, 254 So. 2d at 392.

In a case preexisting our statute, Code, 1931, 62-1B-2, as amended, and predating most decisions in this area, this Court reached a similar conclusion—one which bears heavily on the decision of this case. *State v. Price*, 100 W.Va. 699, 131 S.E. 710. Price was convicted of second degree murder. He had been tried previously and the case set aside. Prior to the second trial, counsel for the defendant requested the prosecuting attorney to furnish a bill of particulars "on which the state expects to rely in the prosecution of this case". The prosecuting attorney did not provide a formal bill of particulars, but told defense counsel he would rely on the evidence introduced in the first case. Important evidence in the first case was to the effect that the deceased had powder burns on his body. The prosecution proved exactly the contrary at the second trial, showing by six witnesses that they had examined the body of the deceased and saw no powder burns. This Court reversed the conviction on the ground that the defense was unfairly surprised. The Court there stated [100 W.Va. at 701, 131 S.E. at 711]:

> " * * * In the absence of any misleading statements as to the testimony surprise at evidence is not generally ground for new trial. *Henderson v. Hazlett, supra.* But where a party has been unfairly surprised or has been misled to his disadvantage by the prevailing party, a new trial should be granted. * * * When the facts in this case are tested by the foregoing rules,

we find that the defendant's plea of surprise is justified. His counsel were diligent at all stages of the second trial. *They attempted to ascertain beforehand the evidence upon which the state would rely, and were prompt in moving to exclude the testimony by which they were surprised.* * * * It was not incumbent upon the prosecuting attorney to provide a bill of· particulars, merely upon the request made by counsel. Neither can we consider the former record in this court as such a bill of particulars as our practice contemplates. But the inference intended by, and the inference drawn from the statement of the prosecuting attorney, was that the evidence of the state upon the second trial would conform in a general way to the evidence of the state upon the first trial. * * * ." (Italics supplied.)

The Court concluded by citing an early English rule [100 W.Va. at 702, 131 S.E. at 712]:

"Where a party or his counsel are taken by surprise, whether by fraud or accident, on a material point or circumstance which could not reasonably have been anticipated, and when want of skill, care or attention cannot be justly imputed and injustice has been done, a new trial will be granted."

Although *State v. Price, supra,* dealt neither with the right of a defendant for pre-trial discovery nor with the question of whether a prosecutor complied with an order for pre-trial discovery, the principle announced there by this Court is just as applicable to this case where there was such a motion and such an order.

Upon proper defense motions, the trial court in Jackson County ordered the prosecuting attorney to furnish defense counsel with " * * * *any statements, either oral or written, made by the defendant, intended to be used by the Prosecuting Attorney of Jackson County, West Virginia,* * * * *in any trial under the above indictment*". (Italics supplied.) The prosecutor in response to the court order answered: "As to any statements, oral or written, made by the defendant the State is not in

possession of any such statement * * * ." The defense had every right to rely fully upon the prosecution's answer. This right of reliance extended throughout the trial.

The prosecutor received the letter written by the defendant during the noon recess of the trial. After that time, he called four more state witnesses and rested. He had ample time to make the statement available to the defense. Coming after the conclusion of the State's evidence and at the beginning of the defense's most important testimony, it is obvious that defense counsel was completely surprised. The letter was obviously prejudicial to the defense. It apparently represented an attempt on the part of the defendant to have Sandra Starkey, a key witness, tailor her testimony. This could be considered by the jury to be an admission of guilty. In addition, nonrelated statements made in the letter such as, "I didn't have any cigarettes to send you, but I will get some somehow even if I have to rob someone here to get them", could easily have indicated to the jury a criminal nature on the part of the defendant and could have influenced their deliberations. Those extrajudicial written assertions by the defendant presented questions to the jury which had no bearing on the issue and should have been excluded as calculated to prejudice the minds of the jury. *Deitz v. Prov. Wash. Ins. Co.*, 33 W.Va. 526, 11 S.E. 50. The surprise use of the letter not only prejudiced the defendant's preparation for trial, but could well have prejudiced the jury and denied the defendant the assurance of a fair and impartial trial.

For the reasons cited in this opinion, the judgment of the Circuit Court of Jackson County is reversed and the case is remanded to the circuit court with the direction that the defendant be awarded a new trial.

*Reversed and remanded.*

BERRY, CHIEF JUSTICE, dissenting:

I respectfully dissent from the majority opinion for the reason that there does not appear to have been any

reversible error committed during the trial of this case. The only ground upon which the case was reversed is a letter written by the defendant. It was a voluntary act on the part of the defendant known by him before the trial and by his counsel soon after it first became known or came to the attention of the State.

The prosecuting attorney did not violate any order of the court by not delivering the letter before the trial because he did not obtain the letter until during the trial. The letter was not withheld from the defendant, but, to the contrary, he was apprised of the letter and it was turned over to his counsel during the trial. The letter does not come within the purview of the principle contained in the cases of *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550; *United States v. Keogh,* 391 F.2d 138 and *Brady v. Maryland,* 373 U.S. 83, and, furthermore, the contents of the letter were practically the same as the other evidence introduced in the trial of the case.

It is clearly not within the ruling in the case of *Hamric v. Bailey,* 386 F.2d 390, relied on in the defendant's brief, because it was known and disclosed before the defendant's evidence was completed and the letter was used by the defendant in the examination of the witness called to testify for the defendant.

For the above reasons, I would affirm the judgment of the Circuit Court of Jackson County.