WALLACE H. WILHELM

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville*

*Correctional Center*

(No. 13978)

Decided December 20, 1977.

*Lawrance S. Miller, Jr., Dailey & Miller*, for relator.

*Chauncey H. Browning*, Attorney General, *William D. Highland*, Assistant Attorney General, for respondent.

MILLER, JUSTICE:

In this original proceeding in habeas corpus, petitioner urges that several errors of a constitutional magnitude occurred in his trial which resulted in his conviction of second degree murder in the Circuit Court of Preston County. He contends that the prosecuting attorney failed to comply with the general discovery order of the court, which required the prosecutor to turn over to

the defense attorneys exculpatory material in the possession of the State.[1]

At the trial of the case the State produced Clarence R. Lane, who was a member of the West Virginia Department of Public Safety working with the State Police Firearms Identification Laboratory. He testified about certain ballistic tests conducted with the murder weapon. On cross-examination, it developed that Lane had made a written report of his findings. The record is clear that this report was not delivered to the defense attorneys pursuant to the court's general order, although certain other reports in the possession of the trooper had been turned over to the defense attorneys prior to the trial.

The defense attorneys, on learning of the existence of the ballistics report, moved the court for a mistrial. At a bench conference, the court examined the prosecutor concerning the failure to turn over the report, and it was the prosecutor's position that he had only learned of the existence of the report the day before. It does not appear that at the time of the bench conference the court, the prosecutor or the trooper had the report. The court indicated at the conclusion of the bench conference that, not having seen the report, he would take the motion for mistrial under adivsement. The court did order that the witness Lane "... will remain subject to recall but the court is going to see defense counsel is

---

[1] The Circuit Court of Preston County had perceptively entered on October 24, 1974, a general order requiring the prosecuting attorney in all criminal cases to disclose to the defendant certain enumerated categories of information which the Circuit Court correctly determined were constitutionally mandated by United States Supreme Court opinions, as set out in the general order:

"... the U. S. Supreme Court in the case of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, held that suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution, and followed this holding in the cases of Giles v. Maryland, 386 U.S. 66, 87 S. Ct. 793, Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, and Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562; ..."

given a copy of his report prior to recall. ... You may recall the trooper after you have been furnished with a copy of the report."

Petitioner points to two matters in the report which could be considered as exculpatory insofar as his plea of self-defense was concerned. The first was the fact that after Trooper Lane had conducted certain ballistics tests, he was able to conclude from the pellet pattern on the deceased female's shirt that the shotgun was fired at the deceased when she was less than eight feet from the muzzle. He had testified to these facts on direct examination and had been cross-examined at length about them by the defense attorneys.

The second fact which had not been disclosed by Trooper Lane in his direct testimony, but which showed in his report, was the fact that:

> "The fired shot entered the front of the shirt just below and to the center of the left pocket. The shot went up into the rear (if the shirt was in an upright position), with the 42 pellets lodging in the rear of the collar."

It is this last factual conclusion on which petitioner's attorneys predicate their argument. They claim this is exculpatory evidence as it bears out their client's testimony. Petitioner testified that immediately before the fatal shooting, he had spent a considerable period of time drinking with the victim and then gone to sleep in the back of the mobile home. Several friends of the decedent had come into the mobile home and awakened him with threats and abusive language. He had picked up the shotgun to chase them out, firing several warning shots while in the hallway. Upon emerging into the kitchen, carrying the shotgun, he saw the victim coming at him with a butcher knife and shot her.

Part of the State's theory rested upon the fact that immediately following the shooting, third parties found the victim seated in a chair near the kitchen table. Consequently, this suggested she had been shot while seat-

ed in the chair. The direction of travel of the pellets therefore was of some exculpatory value to the defendant as indicating the direction of firing on the victim was upward and not downward.

This Court recognized in *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174, 178–179 (1973), that the prosecutor's failure to disclose after demand evidence favorable to the accused violates the due process constitutional guarantee. There can be little doubt that the reference was to the Due Process Clause, Article III, Section 14 of the *West Virginia Constitution*.

*State v. Cowan*, 156 W. Va. 827, 197 S.E.2d 641, 644–48 (1973), dealt extensively with an analogous question of the prosecutor's failure to comply with court-ordered discovery and the use of such non-produced material at trial to surprise the defendant. Since the material in *Cowan* was not exculpatory, the Court noted that *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and its progeny were not directly applicable.

The Court in *Cowan* utilized our criminal discovery statute, *W.Va. Code*, 62-1B-2, to set the standard that where a discovery motion is granted and the prosecutor fails to comply, prejudicial error may result. In determining whether the error is prejudicial, we must determine whether "the defense is surprised on a material issue" or if the non-disclosed material "hampers the preparation and presentation of the defendant's case." Syllabus, *State v. Cowan, supra*.

At issue in *Cowan* was the prosecutor's failure to turn over prior to trial an incriminating letter that the defendant had written. A discovery motion granted by the trial court required the furnishing of any oral or written statements made by the defendant. The letter was turned over to the defendant's attorney only after the prosecutor had used it to impeach the defendant. The court emphasized that the harm was the surprise to the defense, as it raised inferences as to his guilt and injected possible admissions of unrelated crimes.

Here, we are not confronted by a *Cowan*-type situation, where the non-disclosed material had an immediate and direct adverse impact on the defendant's case. Nor do we have the typical *Brady* situation where there is suppression of exculpatory material until some time after the trial.

What is involved is the late disclosure of exculpatory material. The United States Court of Appeals for the Fourth Circuit has discussed this problem in several cases. In *Hamric v. Bailey*, 386 F.2d 390 (4th Cir. 1967), the court granted a habeas corpus petition to a West Virginia murder conviction on the basis that the State had withheld exculpatory evidence until after the jury retired. The court concluded:

> "Finally, on the issue of suppression, we conclude that disclosure of the undisclosed evidence after the jury had retired was too late to overcome the requirements of *Brady*. If it is incumbent on the State to disclose evidence favorable to an accused, manifestly, that disclosure to be effective must be made at a time when the disclosure would be of value to the accused.... *Brady*, to be given vitality, must be interpreted to require disclosure, at least, before the taking of the accused's evidence is complete." [386 F.2d at 393]

In *United States v. Elmore*, 423 F.2d 775, 779 (4th Cir. 1970), *cert. denied*, 400 U.S. 825, the court followed the *Hamric* rule and found no error where the exculpatory statement was furnished prior to the conclusion of the government's case.

In *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973), *aff'd*, 417 U.S. 211 (1974), the court in note 2 further refined the test as to the time when exculpatory material must be produced to avoid error by stating:

> "As suggested in *Hamric*, it may well be that in a more complicated situation, where there is exculpatory evidence having 'a material bearing on defense preparation', the Government should provide the defense with the exculpatory materi-

al prior to trial, otherwise the defense would not be able to 'capitalize' on it. *Cf.*, United States v. Ahmad (D.C.Pa. 1971) 53 F.R.D.186, 193–194; United States v. Cobb (D.C. N.Y. 1967) 271 F.Supp. 159, 163, aff'd., 2nd Cir., 396 F.2d 158; United States v. Gleason (D.C.N.Y. 1967) 265 F.Supp. 880, 884–885. . . ."

We believe the *Hamric* principle as further defined in *Anderson* is a reasonable standard and adopt it into our law, as a guide for determining when the failure to timely furnish exculpatory material will constitute a denial of due process under our *McArdle* case.

In the present case we do not find that the late delivery of the exculpatory report constituted a denial of due process. The trial court acted promptly to hold the witness subject to recall and provided the defense attorneys with time in which to review the report and an opportunity to prepare to question the witness on it. Further, the material was not unduly technical, nor of a nature that required detailed or complex analysis. We are unable to perceive, nor do the defense attorneys point out, any valid reason why they were not able to capitalize on the report.

Petitioner next contends that he was denied a fair trial because the court overruled his motion for a continuance. Petitioner was indicted on March 11, 1975, and the trial commenced on March 23, 1975. His two defense attorneys were appointed by the court on November 19, 1974. Three days before the trial, counsel moved for a continuance based on two grounds.

Counsel first claimed that some of the material required to be turned over under the court's general discovery order had not been produced. The explanation offered by the State was that this material was in the custody of the State Police witnesses, who would not arrive until the day before the trial.

The second ground was based on the absence of a material witness. An affidavit of the witness, which was taken while he was in the Kingwood jail, was shown to

the court. It indicated the witness was aware that on several prior occasions the victim had attempted to attack the defendant with a knife. The attorneys stated to the court that the witness, unknown to them, had been released from jail and had left the State. They believed he was in the Baltimore area, although they did not have an address on him, and felt he could be located within a reasonable time.

The motion for continuance was renewed on the morning of the trial and was again denied. It appears from the record that defense counsel was able to examine the various State's proposed exhibits and were given additional documents. Much of the production occurred the evening before trial.

Most of the material produced related to the shotgun, its spent shells, and to wadding and pellets taken from the victim's body. The defense had already received copies of reports that indicated there were no usable prints on the murder weapon.

No specific reasons are assigned why the late production denied petitioner a fair trial. Argument is made that the lateness itself ought to constitute a denial of a fair trial.

Absent some particular showing of how late production of court-ordered discovery has affected the petitioner's right to a fair trial, late production alone will not suffice to reach the constitutional level of denial of fair trial. It should be stressed, as *Cowan* points out, that a less rigid rule is applicable where the matter is presented on a direct appeal.[2]

---

[2] A different result would be indicated if the identity of the murder weapon or the defendant's connection with it were at issue. This Court has stated that where the State is in possession of physical evidence, which is crucial to the determination of the defendant's involvement in the crime and which evidence must be subjected to scientific analysis to assist in determining the defendant's guilt or innocence, he has the right to have an independent analysis made. *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174, 179 (1973); *State v. Harr*, 156 W. Va. 492, 194 S.E.2d 652, 657 (1973).

As previously noted, the other ground for the continuance rested on the absence of a claimed material witness. The missing witnesses' evidence, relating to a prior attempted attack on the petitioner, is material on the issue of self-defense. *See State v. Stanely*, 112 W. Va. 310, 164 S.E. 254 (1932); *State v. Hardin*, 91 W. Va. 149, 112 S.E. 401 (1922).

Again, because this is a habeas corpus proceeding, we must assess this claim from the standpoint of whether the lack of this evidence, viewed from the totality of the record, resulted in the denial of a fair trial. The record demonstrates the petitioner was able to produce a witness who stated the deceased when drinking had a violent temper. Petitioner also testified about the prior incident at some length. As the accused, the jury may have discounted his testimony to some extent, but we are unable to conclude that the absence of this witness denied the petitioner a fair trial.

We recognize, as has the United States Supreme Court in *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 84 S. Ct. 841 (1964), that there may be occasions when the denial of a continuance is so arbitrary as to violate due process. In fact, because of the particular wording in Article III, Section 14 of the *West Virginia Constitution* that the accused "shall have the assistance of counsel, *and a reasonable time to prepare his defense*" [emphasis added], there is, independent of the Due Process Clause in our Constitution, a constitutional right to a continuance if the defendant is not accorded a reasonable time to prepare his defense. There is no counterpart to this language in the Federal Constitution. We do not find this langauge to be applicable where the issue is the claim of the absence of a material witness rather than a claim of the lack of a reasonable time to prepare the defense.[3]

---

[3] This Court in the past has viewed the question of a continuance in a criminal case to be a matter for the exercise of sound discretion in the trial, which may result in a reversal if abused. *State v. Milam*, W. Va., 226 S.E.2d 433 (1976). While this rule has been stated

The final assignment of error rests on the fact that the court permitted several of the State's witnesses to testify as to certain brief inculpatory statements made by petitioner at the scene of the crime, to the effect that he shot her but he loved her. Claim is made that these statements should have been subject to an *in camera* hearing to determine their voluntariness before being brought before the jury. All but one of the witnesses were neighbors or the ambulance drivers who had come to the scene of the shooting. The same type of remark was made by the petitioner to one of the deputy sheriffs as the deputy entered the mobile home, but this was before any arrest had been made or questions asked. There is nothing in the record to demonstrate that the petitioner was under any threat or coercion. We believe the rule in *State v. Johnson*, W. Va., 226 S.E.2d 442, 446 (1976), is directly applicable. There, we held that a spontaneous statement by a defendant prior to any action by a police officer and before an accusation, arrest or any custodial interrogation is made or undertaken, may be admitted into evidence without first holding an *in camera* hearing to determine its voluntariness.[4]

Notwithstanding the obvious dedication and skill of petitioner's conscientious court-appointed counsel, we are not able to find that his constitutional rights were violated, for the reasons set forth in this opinion. The writ of habeas corpus will, therefore, be denied.

*Writ denied.*

---

without any reference to the provision of Article III, Section 14, relating to "a reasonable time to prepare his defense", it is obvious that the two are intertwined.

[4] The record shows that the defendant did give a written confession subsequent to his arrest and confinement in jail and the court, after an *in camera* hearing, determined it to be voluntary. The record also shows that the prosecutor in his discovery response identified the other oral admissions, and consequently no claim of suppression is made as to these oral statements.