960 F.2d 145
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Douglas Lymont BLAKE, Jr., an infant who sues by and through
his mother and next friend, Pamela F. Blake,
Plaintiff-Appellant,
v.
Robert S. JUSKEVICH, M. D., F.A.C.O.G.; Doctors Knispel,
DIbona & JUSKEVICH, P.C., Defendants-Appellees.
 No. 91-2163.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1992
Decided: April 10, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca B. Smith, District Judge. (CA-90-1713-N)
 Argued: S. D. Roberts Moore, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Va., for appellant.
 Carolyn Porter Oast, Heilig, Mckenry, Fraim & Lollar, Norfolk, Va., for appellees.
 On Brief: Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, Va.; John E. Tantum, Tantum, Hamrick & Jordan, Knightdale, N.C., for appellant.
 John A. Heilig, Grey Sweeney Gerriman, Heilig, McKenry, Fraim & Lollar, Norfolk, Va., for appellees.
 D.Md.
 REVERSED AND REMANDED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Lymont Blake, Jr. ("appellant"), an infant who originally brought suit by and through his mother and next friend, Pamela Blake, seeks a reversal of a jury verdict finding in favor of Robert S. Juskevich, an obstetrician, and his professional corporation (jointly "appellee"), in appellant's claim for damages arising from medical malpractice. Appellant, has, on appeal, alleged errors by the district court in prohibiting an expert witness from providing the underlying basis for his conclusions during testimony, and in not granting his motion for mistrial following appellee counsel's statement, made in closing argument, referring to the expert witness' failure to review relevant evidence prior to trial.
 
 
 2
 Appellant, through his mother Pamela Blake, brought the original action for malpractice against appellee. On or about November 23, 1979, appellee delivered appellant using a forceps procedure necessitated by the relative difficulty of the birth. In the course of the delivery, appellee noticed that appellant displayed a shoulder condition which develops as a complication of a difficult birth, known as dystocia. Appellee attempted various maneuvers to induce a quicker birth while preventing any permanent harm to the child. The maneuvers were unsuccessful in preventing the apparently permanent disability of appellant's arm and shoulder.
 
 
 3
 At trial, appellant asserted that appellee had deviated from the standard of care required of him in various ways. Appellant's witness, Dr. William Rosenzweig, testified in support of appellant's claims of the deviation from standard practice.
 
 
 4
 During pre-trial discovery, appellee had sent out interrogatories which sought information about the expert witnesses appellant sought to bring. Among the interrogatories issued was a request for the identity of the expert witness, the subject matter of the testimony the expert would provide, the substance of the facts and opinions to be offered, and a summary of the grounds for those opinions. Appellant answered all parts of the interrogatory except the final section which called for the grounds for the expert's opinion. Appellee's counsel never sought additional information from appellant as to the grounds for the witness' opinions.
 
 
 5
 The district judge, in response to appellee's motion to limit testimony, prohibited Dr. Rosenzweig from testifying as to the grounds for his opinions, since the grounds had not been provided in the discovery response. Consequently, appellant was unable during direct examination to elicit any testimony regarding the witness' review of medical records or the deposition of appellee's expert witnesses.
 
 
 6
 During closing argument, appellee's counsel referred to Dr. Rosenzweig's limited testimony:
 
 
 7
 there is not one shred of evidence from Dr. Rosenzweig's mouth that he looked at any of the depositions taken in this case, none. None of the sworn testimony taken before we came to court on Monday has been looked at by Dr. Rosenzweig. Number two, Dr. Rosenzweig never testified that he read the office records of these doctors in this case. He never testified that he read the delivery record in this case. He never testified that he looked at any medical literature in this case.
 
 
 8
 Following part of appellee counsel's statement,[1] appellant's counsel objected to the part of the closing argument that implied that the Dr. Rosenzweig "had not read anything."
 
 
 9
 The district judge acknowledged the objection, and found nothing improper in appellee counsel's statement "because every time he's made the argument he's put the caveat, 'no testimony in this case.' "[2] She expressed her opinion that the statements would have been improper if the caveat were absent. She added that her rulings about appellant's failures in discovery still applied, and that those failures could not be cured at that point in the proceeding.
 
 
 10
 Appellant moved for a mistrial. The motion was immediately denied. The jury was instructed generally not to consider the statements of the attorneys in closing as new evidence in the case. The jury returned a verdict on behalf of appellee.
 
 
 11
 We need not investigate the correctness or incorrectness of the ruling on the failure of appellant's counsel to provide, in form at least, an answer to the interrogatory. Cf. Fed. R. Civ. P. 26(e); Fed. R. Evid. 705. We accept, for purposes of discussion, that the ruling was correct. Nevertheless, the existence of that ruling made it imperative that appellee, who had the benefit of the ruling that no statement could be made regarding the grounds for Dr. Rosenzweig's opinion, live by the same strict standard throughout.
 
 
 12
 While on most occasions the remarks concerning lack of action by Dr. Rosenzweig were limited by a reference-a caveat-to "testimony in this case," the statement was made by appellee's counsel that Dr. Rosenzweig had "reviewed nothing that he testified about." The remark, to be accurate and fit the proscriptions of the court's evidentiary order, would have to convey the thought that Dr. Rosenzweig had provided no evidence that he reviewed what he testified about. Instead the "not" was linked to failure to review not to the absence of evidence of that review.
 
 
 13
 If the specific error is to be overlooked as a slight discrepancy, to be excused because of numerous references elsewhere tying the negative assertion to testimony in the case, the excuse will not cover the additional remark made in closing argument that"[n]one of the sworn testimony taken before we came into court on Monday has been looked at by Dr. Rosenzweig."
 
 
 14
 The district judge, in the heat of a contested trial, came to a reasonable but, as it turns out, not wholly accurate conclusion that "every time [counsel] made the argument he's put the caveat." (Emphasis added). Quite pertinently, the district judge came to the conclusion that "it would be improper if he didn't put the caveat on it." With that conclusion we agree. Impropriety, even if inadvertent, did occur and the fair trial, which is always the objective, would be frustrated were its probable effect not eliminated. ( See United States v. Elmore, 423 F.2d 775, 781 (4th Cir. 1970), cert. denied, 400 U.S. 825 (1970), in which we found that a mistrial is warranted, as a promotion of the ends of justice, where the poison exposed to the factfinder was not "minor aberrations in a prolonged trial," but served to add up to "cumulative evidence" that the proceeding was "dominated by passion and prejudice ... ")
 
 
 15
 Accordingly, we reverse and remand for a new trial. On remand, the trial court will have an opportunity to avoid contention, and possible further appellate review, by allowing appellant to cure the technical deficiency of his interrogatory answer with an amended response.
 
 
 16
 REVERSED AND REMANDED.
 
 
 
 [1]
 Which included an additional inflammatory assertion about appellant's witness: "He blew into town from California, the very first time he's been here in Virginia, having reviewed nothing that he testified about, gave us a laundry list, a recipe of what this doctor did wrong, picked up his $5,000 and hey-diddle-diddle back to San Francisco." And also included the question "Who's in the best position to know what was going on in the Commonwealth of Virginia in 1979?"
 
 
 [2]
 It is apparent that this assertion on the part of the trial judge was in point of fact erroneous. Appellee counsel said specifically, with no caveat, that appellant's witness had not seen any of the sworn testimony taken prior to trial; not that the witnesses had shown no evidence that he had seen the sworn testimony, but that he had not seen it